ALBANY,
Oct. 1836.

The People
v.
Davis.

---

### The People *vs.* Davis.

A witness duly subpœnaed to attend a circuit is bound to make *extraordinary* efforts to obey the writ; nothing but extreme poverty and utter inability to attend, or sickness of himself or family, conclusively proved, will excuse his non-attendance.

Unless the contempt is purged, the witness will be fined not only the costs of the attachment, but to the full amount of the costs of the circuit incurred by the party who subpœnaed him, if the trial was put off in consequence of his non-attendance.

The defendant was brought up on an *attachment* for disobedience to a *subpœna* served upon him to attend as a witness for the plaintiff in a cause of *Kelly* v. *De Forrest,* noticed for trial at the *Warren* circuit, on the first Tuesday of June last. The defendant was duly subpœnaed on the 26th May, ( 13 days

before the circuit,) at the city of New-York, where he resided. Ten dollars were given to him to pay his expenses. He did not attend. Being brought into court, interrogatories were filed, to which he answered. The Court also, in pursuance of 2 *R. S.* 537, §19, received the affidavit of the *relator*, the plaintiff in the cause, contradictory of the answers, and the affidavits of the defendant, and of an individual to whom he had assigned his property as an insolvent debtor. The substance of the answers is that he is utterly insolvent, and had, when subpœnaed, delivered up all his property without reserve, into the hands of his assignees under the insolvent law, except what was exempt from execution ; that he had a wife and three children for whom he provided, and that two of his children were at the time when the subpœna was served, and up to the time of the circuit, so sick as to render it improper for him to leave them ; that his family were wholly dependent on his daily labor for their daily support, and that they must have suffered, if left, for the common necessaries of life. That his wife was unable to attend the children alone during nights, and he could not procure her any assistance ; that the ten dollars which he received as witness' fees would not, as he believes, have defrayed his expenses of travel by the public conveyances. That he advised with his friend, and leaving the fees with him, procured him to write to the plaintiff's attorney, stating his excuse. The depositions do not materially vary the case from the answer.

*By the Court,* Cowen, J. It was the duty of the witness to obey the subpœna ; and he is guilty of a contempt in disregarding it, and must be punished unless he has furnished us with a legal excuse. Both insolvency and poverty in the witness are sworn to by himself and Mr. Lamb who was one of his assignees. But it is scarcely necessary to observe that these form no excuse in the abstract. If received at all it must be in connection with the situation of the family, or as showing the utter inability of the defendant to defray his expenses. In rendering these excuses of sickness and extreme poverty, while we are not disposed to deny the validity of either if clearly made out in a proper degree, we cannot allow the

ALBANY,
Oct. 1836.

The People
v.
Davis.

witness to judge for himself. Were we to stop and be content with his telling us in this general way, " some of my family were so sick that, with want of assistance and considering our poverty, I deemed it improper to leave home," we should surrender our own judgment. Men often take great latitude in swearing to matters of opinion, even where they are disinterested ; and to receive sworn answers framed in that manner, for the purposes of exculpation, would be to render the process of subpœna entirely inefficient. The answer in question is remarkable for being barren of any facts except that of an insolvent assignment, by which we can govern ourselves in coming to a conclusion. Take the allegation of sickness: we have no information as to kind or degree. For aught we know the two children may have had slight colds, or the hooping cough. Either might pass for sickness, and so might any other slight deviation from good health, in the deposition of a man deeply interested. Seeing himself in danger of a fine, he would of course go on and say " the sickness was such that I deemed it improper to leave home," as he does here. Telling us that Mrs. Davis was not able to take care of the children in the night, is equally unsatisfactory, until we learn that they required such care. So of the inability to procure assistance, until we see that the assistance was necessary. Mr. Lamb comes in and says, " it was publicly rumored in the neighborhood that two of the family were sick, as stated in said answer ;" and he has no reason to doubt it, and verily believes it. If the children were seriously indisposed, it is highly probable they were attended by a physician, whose opinion would have been lawful evidence. He could have sworn generally, as a witness of skill. Mere opinion from *any other* is not receivable. It is incompetent, according to the settled law of evidence, even from a disinterested witness. Here the main witness, the man best qualified to speak, is deeply interested, and we yet have but his mere loose opinion, upon all the circumstances, that it was improper for him to leave home. The kind or degree of sickness, or that the children had ever been attended in the night, or that he had ever tried to procure assistance, or whether a physician had attended, is all left out, and the corroborative

evidence is, neighborhood rumor and belief; that too comes from a man who has in other respects made a somewhat intemperate affidavit in respect to the motives and character of Mr. Kelly. I mean Mr. Lamb, who swears roundly that Mr. Kelly's affidavit in respect to Davis' dwelling-house is "grossly deceptive." Full thirteen days elapsed, I perceive, between the service of the subpœna and the sitting of the circuit court. Looking at the answer we are to infer that instead of making the least effort to get on his way to the circuit, Mr. Davis folds his arms, and sitting down with his friend Mr. Williams, anticipates the excuses which he now sets up, and directs Mr. Williams to render them to Mr. Hay, the attorney. But if he means that the letter was confined to the mere excuse of poverty, and want of money, and his family being in danger of suffering for want of common necessaries, it seems to me he was quite premature. He had got ten dollars, the full fees allowed by law. It would have looked much more like a desire to obey the subpœna in good faith, had he made an effort to raise what little balance might have been necessary. We should at least have listened with more favor to the excuse. He had yet nearly a fortnight within which to make the necessary arrangements; arrangements for a quick journey to what was usually a short circuit, and certainly not an expensive journey, if conducted with due economy. So poor a man as he and Mr. Lamb make him out to be, of course would not think of travelling except in a very close way; and poor men, if they will take pains, can travel very cheaply.

As to the excuse of *inability from poverty,* we should have been much better satisfied with more particularity. *Poverty* and *dependence* on daily labor for daily bread, as expressed in the answer and in Mr. Lamb's affidavit, are relative terms; and it would have been much more instructive, if instead of such generalities the defendant had sworn that he had no money, and could not get any, after trying, in the course of the twelve or thirteen days opportunity. In the mean time, too, I should suppose that in a civilized, not to say a humane neighborhood, some expedient, even short of a resort to public charity, might have been effectual to save the defendant's family from suffering for want of food. We have no ac-

count of any attempt to dispose of the family with a view to the journey; nor are we here furnished with the degree in which they wanted what the defendant calls the common necessaries of life. He had, about that time, though how long before we are not precisely informed, assigned his property under the insolvent act; and we are not disposed to doubt but that the case was equally honest with the general run of insolvencies. Mr. Kelly, however, says, that when he went for an explanation why the defendant had not attended under the subpœna, he was told nothing of sickness, or downright poverty; but only that the ten dollars being unequal to the expenses, and the defendant earning 10 shillings per day, which would no more than support his family, he had concluded not to go. The suit was by Kelly, to recover from De Forrest property which he (Kelly) had sold to the defendant, while in good credit; and which it was alleged he had shortly after assigned to De Forrest, with intent to defraud the plaintiff. He says, also, that he found the defendant and his family in a three or four story house in Pearl street, expensively furnished. This is the account which Mr. Lamb, in his deposition, pronounces to be grossly deceptive; and he adds, that he has heard the reputation of Kelly spoken of by various persons; that his reputation for truth and integrity is bad in the neighborhood where he resides, and that from the deponent's knowledge of his reputation, and his affidavit as to the residence and furniture of the defendant, he would not believe him under oath. It is probable from the depositions of the defendant and Mr. Lamb, his assignee, that Mr. Kelly had mistaken the furniture of another, in his progress through the lower stories in the Pearl street house for that of the defendant. It is not a very surprising mistake, on the part of a stranger, resident so far in the country as Queensbury, Warren county. The defendant and Mr. Lamb both being residents in New-York, have greatly the advantage as to accuracy in this respect. The only surprise is that the parties being thus located, and without any apparent means of adequate knowledge, Mr. Lamb should have undertaken to pronounce on Mr. Kelly's general credibility upon oath. This is but another illustration of the great care with which even witnesses who ap-

pear to be without interest should be kept to premises, instead of going off into a general conclusion.

There is reason to believe, also, from the depositions, that the costs of the circuit in June are not the first bill to which Mr. Kelly has been subjected by the non-attendance of the defendant. The first loss was probably the reason why Mr. Hay, the attorney, intimated on the back of the ticket, that an attachment would be the consequence of a default in this instance. I am aware that the defendant admits no such intimation on the ticket. What is still more remarkable, he read the ticket carefully through, and it contained no *duces tecum* clause, as he feels confident. He is also confident that no original subpœna was shown to him. Unfortunately, young Mr. Hay swears positively that he delivered the ticket, a copy of which is annexed to his affidavit. The ticket served is not now produced, for which the defendant assigns this reason : " The said ticket is not now in the possession of this defendant, nor can he have access to the same, if the same is not lost or destroyed, in time for these answers." It was quite easy for him to put the ticket out of his possession, and procure it to be destroyed. That would have literally satisfied the reason given. That the ticket has gone by any accident we are not told ; nor would even that be very satisfactory, in the face of the great caution which appears to have been taken by the attorney of Mr. Kelly, to fix on this defendant the alternative of an open contempt, or deliberate and rather hazardous perjury, in respect to service and contents, at least. After two such extraordinary denials, and an account of the document, which leaves so much room to suspect its wilful suppression, not to say a perjured misrepresentation of its contents. I suspect that had the excuses come in a more tangible shape, resting as they do upon the unsupported oath of the defendant, they could hardly be received. *Falsus in uno falsus in omnibus*, is a maxim which does not stop at *nisi prius*. All the rules of evidence which govern in the estimate of its weight or effect, are essential to the discovery of truth, whether addressed to a jury, or coming in the form of written answers or depositions.

ALBANY,
Oct. 1836.

The People
v.
Davis.

The suit of Mr. Kelly was, it seems, an attempt to snatch what he thought due to him from the wreck of a fraudulent insolvency. The defendant was largely indebted to him when he assigned; and owed him at least every true explanation. He swears that Mr. Kelly told him he did not know that his non-attendance had made any difference, and finally expressed his own opinion that his testimony would have been an injury to Kelly. Judging from what is before us, it is to be feared, for more than one reason, that it would indeed fail to do Kelly much good. The excuse is, however, exactly in keeping with several others which have been assigned. It is asking us to sanction the contempt, on the ground that the witness is advised and believes that his testimony was not material. Mr. Kelly swears that to him the defendant admitted as a prominent reason, that he feared an explanation might implicate himself. The giving of this is distinctly denied by the defendant; and both he and his assignee, Mr. Lamb, are vociferous in asserting that the insolvency is a very honest one. We hope so; but we cannot, without some better reason than we have yet seen, exempt him from the test of a cross-examination, if Mr. Kelly shall insist upon it. The case is open to farther observation, but I forbear to pursue it. .

The process of subpœna demands great and extraordinary effort, on the part of the witness, to obey. It commands him expressly to lay aside his business and excuses. And while it lays him under severe obligations, it clears away obstructions in the path of obedience. The witness was always privileged from arrest on civil process in going, staying and returning. It is not denied that serious sickness in his family, such as would prevent a prudent father or husband from leaving home on his own important business, would save him from the imputation of a contempt, and perhaps from an action. But such a case ought clearly to be shown to the court, and not left to be judicially inferred by the witness, when arraigned on a criminal charge. . He may exculpate himself by swearing to *facts*, in answer to the interrogatories, provided he remains uncontradicted. But his oath must give *facts* as contradistinguished from his inferences. Above all, where the summons allows him full time, he should struggle to get

ready, as he would to go abroad on his own pressing business.
If inevitably disappointed, after exhausting every reasonable
expedient, he ought certainly to be excused from the payment
of a penalty, which presupposes some degree of neglect, at
least. Witnesses are the summary instruments of investiga-
tion in all our common law courts. It is not till a positive
disability is apparent that their domestic examination will be
received as a substitute for their actual presence. The im-
portant right of oral examination and cross examination is at
stake, and every good citizen, if he could be supposed to re-
gard-nothing beyond his own rights, should struggle for the
front rank in the order of obedience. The least we can say
of the case before us is, that it presents an unpleasant contrast
to all this ; great diligence, from first to last, in devising col-
orable excuses, without lifting a finger in preparation to go
forward. The defendant must be fined, and the fine ought,
at least, to be so large as to indemnify the plaintiff Kelly
against the expenses of the last circuit, with the costs of this
proceeding. 2 *R. S.* 538, § 21.

An affidavit was made by Mr. Kelly on the 13th of June
last, which was affixed to the papers upon which the attach-
ment issued, showing that the cause went off at the circuit
under the advice of counsel, in consequence of Davis' ab-
sence. We are satisfied that a loss has accrued by the mis-
conduct of Davis, in not obeying this summons. 2 *R. S.* 535,
§ 1, *sub.* 5. In that case the statute, 2 *R. S.* 538, § 21, re-
quires us to impose a fine to be paid over to the party ag-
grieved, equal to his loss, together with costs and expenses.
The whole of these are claimed to be fifty dollars, which ap-
pears to be a moderate estimate for the costs of the circuit,
and the expenses of the proceeding on this attachment. The
fine is, therefore, fifty dollars,* and the defendant must stand

---

* The reporter has the impression that it was referred to the clerk, to as-
certain the costs of the circuit and of the attachment, and that he was di-
rected to insert such sum in the order as should thus be ascertained.

committed till that fine be paid. 2 *R. S.* 538, § 25. The commitment will be to the jail in the city of New-York, unless it be rendered unnecessary by an immediate payment.