Argued September 17, affirmed September 28, 1915.

# FITZHUGH *v.* NIRSCHL.*

(151 Pac. 735.)

**Exceptions, Bill of—Bystanders' Bill—"Disinterested Witness."**

1. Under Section 170, L. O. L., declaring that if an objection is made to any ruling, and the truth of the statement thereof is not agreed upon between counsel and the court, counsel may verify his statement on his own oath and that of two disinterested witnesses, the brother of a party to the action is not a "disinterested witness" competent to verify counsel's oath.

**Exceptions, Bill of—Bystanders' Bill—Mode of Preparing.**

2. Section 170, L. O. L., relating to bystanders' bills of exceptions, and providing that affidavits of counsel and disinterested witnesses shall be taken before the clerk, and his certificate attached, is mandatory, and where not so taken the bill cannot be considered.

**Fraud—Diseased Animals—Sale—Measure of Damages.**

3. In an action for damages to a herd of cattle, which the buyer claimed were sold when infected with a disease, where there was no evidence that animals, other than those which died, were affected, the buyer's measure of damages was the value of the dead cattle, which should be computed as if they had been in a good condition.

[As to actions to recover for false representations, see note in 18 Am. St. Rep. 555.]

**Appeal and Error—Review—Harmless Error.**

4. The erroneous refusal to give an instruction on the measure of damages is harmless, where the jury found that plaintiff was not entitled to recover anything.

**Fraud—Diseased Animals—Damages—Complaint—Restrictions.**

5. Where a buyer's complaint averred that the cattle sold were infected with a disease known as "black-leg," no recovery for damages sustained from other diseases can be had; the complaint having limited the issues.

**Fraud—Fraudulent Concealment.**

6. Where a seller of animals, knowing that they have a latent disease, which affects their value, of which the buyer is ignorant, conceals it, he is liable for damages.

---

*As to damages recoverable for fraud and deceit in selling diseased animals, see note in 34 L. R. A. (N. S.) 697.        REPORTER.

From Lane: LAWRENCE T. HARRIS, Judge.

Department 2.    Statement by MR. JUSTICE MCBRIDE.

This is an action by John R. Fitzhugh against Andrew Nirschl to recover damages because of fraudulent cancealment by defendant of the fact that certain cattle sold by him to plaintiff were diseased.

The complaint alleged that in the latter part of the year 1913 he purchased from defendant a herd of cattle for the purpose of stocking a ranch in Lane County, which purpose was well known to defendant; that at the time of the purchase of said cattle they were afflicted with an infectious disease commonly known as the "black-leg," and defendant then knew said cattle were so infected, and that plaintiff did not know that fact; that by reason of the premises the plaintiff has been damaged in the sum of $500.

The defendant answered, admitting that he sold plaintiff a herd of cattle as alleged, but denied generally all the other allegations of the complaint. The plaintiff introduced evidence tending to show that within two weeks after he bought the cattle one of them died, that within three weeks after the purchase two more died, and that he found three more dead a short time afterward. A veterinary surgeon pronounced the disease of which they died "black-leg." Evidence was introduced tending to show that defendant had lost some cattle before the sale, and that he had been told that the symptoms attending their death indicated black-leg; but defendant contradicted this testimony. There was also evidence introduced tending to show the value of the animals of plaintiff which died of the disease, but no evidence that others of the herd had been sick or infected, or of the value of the remaining animals, or of any depreciation in their value. There was a general verdict for defend-

ant, and plaintiff appeals, alleging as error: (1) The ruling of the court excluding the evidence of witness John H. Perkins; and (2) in refusing to give instructions Nos. 1, 2 and 3 requested by plaintiff. Said instructions are as follows:

"(1) The measure of damages which the plaintiff is entitled to recover in this case, if you find that he is entitled to recover damages, will be the excess, if any, of what the cattle would have been worth, had they been sound and free from any infection, over their value at the time of their purchase; or, in other words, if you allow the plaintiff damages, you shall allow him the difference between the value of the cattle as infected and what their value would have been if they had been sound and free from infection.

"(2) In the complaint the plaintiff avers that the cattle were infected with a disease commonly known as 'black-leg'; but if you find that the cattle were infected with any disease, of which the defendant had knowledge, you shall allow the plaintiff such damages as he has suffered according to the measure of damages last stated, or, in other words, if you find that the cattle were infected with any disease, and the defendant knew that the cattle were infected with some disease, it makes no difference as to whether or not the defendant knew the name of the disease, or what kind of a disease it was, the measure of damage would be as last stated.

"(3) If the defendant's cattle were infected with any kind of a disease, or if they had been so infected within a recent time, it was his duty to tell plaintiff about it; and if he failed to do so he wronged the plaintiff, and must answer to the plaintiff in damages to the amount that the plaintiff has suffered on account of the diseased cattle, according to the measure of damages already stated to you."

AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. H. E. Slattery.*

For respondent there was a brief over the name of *Messrs. Foster & Hamilton,* with an oral argument by *Mr. R. S. Hamilton.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. It appears from the record that the stenographer's notes showed no exception to the ruling of the court excluding the testimony of the witness Perkins, and that the court refused to certify that any exception was taken. Therefore plaintiff, in order to bring himself within the provisions of Section 170, L. O. L., presented to the court the affidavits of himself, I. W. Fitzhugh, Carl Hopkins and H. E. Slattery, his attorney, as to the fact of the exception, and presented the same to the court. None of these affidavits were taken before the clerk, and it appears by an affidavit filed in the case that I. W. Fitzhugh, one of plaintiff's affiants, is a brother of plaintiff. Section 170, L. O. L., requires counsel to verify his statement of the proposed exception by his own oath and that of two respectable and disinterested persons, or by his own oath and that of the stenographer. The concluding clause of the section is as follows:

"All affidavits of said persons shall be taken by the clerk of the court, who must certify thereon, if he is satisfied of the fact that the person is respectable and disinterested."

The brother of the affiant was not a disinterested person, within the meaning and intent of this section: *Lovering* v. *Lamson,* 50 Me. 334; *Lyon* v. *Hamor,* 73

Me. 56; *Blodget* v. *Brinsmaid*, 9 Vt. 27; *Hasceig* v. *Tripp*, 20 Mich. 216.

2. The statute requiring the affidavits to be taken before the clerk and his certificate to be attached thereto is mandatory. It is the only means by which the appellate court can appraise the character of the witnesses, and a disregard of this provision is fatal to this assignment of error.

3, 4. Instead of the first instruction asked by plaintiff's counsel the court gave the following as to the measure of damages:

"If you find that the plaintiff is entitled to a verdict against the defendant, then the next question you will have to decide will be: How much is the plaintiff entitled to? There has been some evidence offered in the trial of the case which the plaintiff claims tends to show that some of the cattle which he procured from the defendant died after the transfer. The plaintiff would be entitled to recover from the defendant the reasonable value of the cattle that died, estimating the reasonable value of those cattle at what they would have been worth had they not been infected by the infectious disease, as claimed by the plaintiff. In other words, you would be required to estimate the value of the cattle that died, assuming that they did not have any infectious disease, and whatever was the reasonable market value of those cattle, assuming that they were not affected with an infectious disease, would be the amount that the plaintiff would be entitled to recover from the defendant. I am referring now to the cattle that died. There is no evidence in this case at all that would warrant you in assessing any damages against the defendant on account of any cattle that are still alive. The only evidence that has been offered on the trial of the case with reference to the question of damages is merely with reference to the cattle that have died since the transfer of the cattle from the defendant to the plaintiff."

This instruction, in view of the testimony given by plaintiff, stated the correct measure of damages. There was no testimony whatever that any other cattle than those which had died had been infected or suffered any injury, or as to any depreciation in value from any cause, and any attempt by the jury to assess damages on account of depreciation in value would have been a mere guess. If the jury had accepted the testimony of plaintiff and his witnesses as true, they would have been compelled under the instruction to have found in favor of plaintiff for the value of the cattle which plaintiff's evidence showed had died as a result of the alleged infection. Their failure to do so showed that they found either that the cattle did not die of black-leg, or that defendant was innocent of any deceit or fraudulent concealment; so, in any event, plaintiff was not injured by the refusal of the court to give the requested instruction.

5, 6. The other two instructions requested were faulty, because by giving them the court would have allowed plaintiff to recover for an injury different from that specified in his complaint. The object of pleading is to apprise a party of the nature of the injury which it is claimed he has committed, so that he may know with reasonable certainty how to prepare his defense. Perhaps it was not necessary for plaintiff to have been absolutely specific as to the disease which he claims destroyed his cattle. If he knew, it was his duty so to state. If he was ignorant of its exact nature, he could have stated that fact; but, having been absolutely specific, he should be confined to the disease specified. A man cannot sue his neighbor for willfully or negligently giving him the smallpox, and recover upon proof that he gave him the itch. Having limited his damage in this case to a specific

disease, the defendant had a right to assume that proof of the existence of such disease would be the matter relied upon by plaintiff at the trial, and therefore prepare himself to meet that issue, and show that no such disease existed in his herd, and would be misled if, upon the trial, he was required to rebut proof of some disease not mentioned in the pleadings.

"If plaintiff avers negligence in general terms, without specifying wherein it consists, his declaration, petition or complaint will be good on general demurrer, though under some systems it will be subject to a motion to make it more definite and certain. But where he avers that the negligence of defendant consisted in one thing, and then proves negligence consisting in something else, he ought not be allowed to recover. 'It would be folly to require the plaintiff to state his cause of action and the defendant disclose his grounds of defense, if in the trial either or both might abandon such grounds and recover upon others which are substantially different from those alleged' ": 6 Thompson, Neg., § 7471.

"If an allegation be made in a pleading which embodies matter of essential description of that which is material to the cause of action or ground of defense, or operates as a limitation, of that which is material, the evidence must correspond to such allegations; else a variance will be created, and the action cannot be maintained without an amendment of the pleadings": 13 Ency. of Ev. 633.

Here, to say the least, the specific description constitutes a limitation on that which is material. Counsel for plaintiff cite the case of *Grigsby* v. *Stapleton,* 94 Mo. 423 (7 S. W. 421), which was an action to recover the price of certain cattle, in which the defendant, among other defenses, pleaded: (1) A fraudulent representation as to the health and condition of the cattle; and (2) fraudulent concealment of the fact that

they had Spanish or Texas fever. In this case Justice BLACK uses the following language:

"If, therefore, plaintiff knew they [cattle] had the Texas fever, or any other disease materially affecting their value upon the market, and did not disclose the same to the defendant, he was guilty of a fraudulent concealment of a latent defect. It is not necessary to this defense that there should be any warranty or representations as to health or condition of the cattle. Indeed, so far as this case is concerned, if the cattle had been pronounced by some of the cattlemen to have the Texas fever, and, after knowledge of that report came to plaintiff, some of them to his knowledge died from sickness, then he should have disclosed these facts to the defendant. They were circumstances materially affecting the value of the cattle for the purposes for which they were bought, or for any other purpose. * * To withhold these circumstances was a deceit, in the absence of proof that defendant possessed such information."

The pleadings are not given, beyond what we have heretofore stated, and the language used must be considered with reference to the case then before the court. The opinion states that it was shown beyond any question that the cattle had the Texas fever. Therefore, so far as appears, there was nothing in the case suggesting the question raised in the case at bar. The court was considering a case where the disease alleged had been absolutely proved; there being no question as to the relevancy of testimony to the allegations of the complaint. The court properly laid down a general rule which is correct, namely, that if animals have any latent disease which affects their value, and the seller knows this fact and fails to disclose it to a buyer, who does not know of its existence, the seller is guilty of a fraudulent concealment and

liable accordingly. So in this case, if the cattle sold by defendant had any latent disease whatever materially affecting their value, the existence of which he knew and of which plaintiff was ignorant, it was his duty to have disclosed it; but before plaintiff can compel him to respond in damages for a breach of such duty he must allege the facts constituting it in such a way as not to mislead the defendant into preparing to defend against a particular and specific breach, and then ask the court at the close of the trial to instruct that plaintiff may recover upon any breach whether alleged or not.

We find no error in the record, and the judgment is affirmed.        AFFIRMED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE EAKIN and MR. JUSTICE BEAN concur.