Argued October 3, reversed and case dismissed October 24, 1956

# STATE OF OREGON *v.* YATES
302 P. 2d 719

*Dwight L. Schwab,* of Portland, argued the cause for appellant. On the brief were Hutchinson, Schwab and Burdick, of Portland, and Edward M. Murphy and Gordon G. Carlson, of Roseburg.

*Don H. Sanders,* Deputy District Attorney for Douglas County, argued the cause for respondent. On the brief was Robert M. Stults, District Attorney for Douglas County.

Before ROSSMAN, LUSK, BRAND, and PERRY, Justices. WARNER, C.J., not participating.

PER CURIAM.

The defendant Spencer W. Yates is a member of the Bar of Oregon. He was found guilty in the circuit court for Douglas County of a direct contempt committed in the presence of the court and he was sentenced to imprisonment for one day in jail. He now appeals. The alleged contempt occurred in the course of a jury trial in an action for personal injury entitled *Dorothy J. Tucker v. Arcoa, Inc.,* an Oregon Corporation, in which case Mr. Yates represented the plaintiff. The subject under consideration was the sufficiency of a "trailer hitch" on the trailer which had injured the plaintiff. The witness under examination was James R. Grady, a safety engineer employed by the State Industrial Accident Commission. The witness was a man of 14 years experience and was a member of the

approval committee whose responsibility it was to check equipment, machine design and safeguards for compliance with the Oregon safety requirements. He testified to certain apparent defects in the trailer hitch. Thereafter the following transpired:

### "RE-REDIRECT EXAMINATION BY MR. YATES

"Q What is your opinion as the adequacy of this coupling device and its satisfactory operation based upon your examination of it?

"A Well, before we—it is my opinion before we could grant an approval on it we would ask for the points that I brought out be corrected.

### "RE-RECROSS EXAMINATION BY MR. DAVIS

"Q Well, that wasn't very responsive even yet. Is it your opinion—what is your opinion of this coupling device?

"A My opinion is that it would not meet the requirements for approval.

"COURT: Well, what technical training have you had along devices of this sort, or any other devices—schooling and things of that kind?

"A The way we work—in other words, when we require information we ask that competent people make tests. We would, for example, in metallurgy, we would ask that responsible people make tests of the material and the hardness and durability and ability to withstand wear. We would ask that the manufacturer mount the hitch in a position where it is to be used and to simulate conditions where it is to be used and test it through destruction so that we could know just what it will stand.

"Q (By Mr. Davis) Well without these things then you can't actually form an opinion until you have these tests, can you?

"A We would require that—

"COURT: Oh, listen. He asked you a question. You give a responsive answer.

"MR. YATES: If it please the Court—

"COURT: I am getting tired of this man giving evasive answers. I want the question read to him. I want him to give a responsive answer, if he can; if he can't, let him say so.

"(The question was started to be read by the reporter.)

"MR. YATES: May it—if it please the Court, may I object to the Court's irascible tone? I mean, you can tell him without—

"COURT: Listen. I don't care to` hear you make any remarks about the tone of my voice!

"MR. YATES: I have entered the objection. That is all I have to say.

"COURT: Yes, sir. Let that be the last one you ever make of that kind in this court.

"The question was read by the reporter.

"A That is right."

The objection of the defendant Yates to the Court's irascible tone constitutes the sole basis for the judgment of contempt.

On the 28th day of February the trial ended with a judgment of involuntary nonsuit. On Saturday, March the third, the trial judge by telephone notified the defendant to be in court at 9:30 a.m. on Monday the fifth day of March. The trial court certified to a bill of exceptions in the contempt proceeding. Attached thereto is a transcript of the proceedings held on the 5th of March. No testimony was taken at that time. The transcript consists of a lengthy oral statement by the trial judge in which he found the defendant guilty and gave the defendant an opportunity to offer a

public apology for the contempt, to which the defendant replied, in part, "I feel I cannot retract what, in my own conscience, I know to be true." The defendant asked permission to make a short statement with respect to the very issue in hand, and the court replied that he did not care to hear any statement. The defendant then objected to the proceedings upon the ground that they were not timely and because the trial judge was not qualified to pass upon the questions involved, whereupon the court pronounced the jail sentence to which we have referred.

Aside from the verbal comments of the court, the only findings made or entered appear in the judgment order, which reads as follows:

"This cause came on for hearing before the undersigned Circuit Judge and a jury on February 26, 1956, and continued to be heard on February 27, 1956, plaintiff appearing by her attorneys, Spencer W. Yates and Gordon G. Carlson, and the defendant appearing by one of its attorneys, Robert G. Davis, when on said 27th day of February, 1956, while said Court was in session and in the immediate view and presence of the Court, and James R. Grady was a witness in said cause, having been duly sworn, the said Grady gave evasive and argumentative answers to questions propounded to him by the attorneys; that the Court thereupon directed said witness to give responsive answers to said questions and the said Spencer W. Yates then and there used the following disorderly, contemptuous and insolent language toward the Judge of this Court while holding Court, which tended to impair the authority of said Court, said language being in words as follows: 'May it—if it please the Court, may I object to the Court's irascible tone? I mean, you can tell him that without—';

"It is, therefore, hereby ORDERED, ADJUDGED AND DECREED that said Spencer W.

Yates is guilty of disorderly, contemptuous and insolent behavior toward the Judge of this Court while holding Court, tending to impair the authority of such Court, and that he be imprisoned in the county jail of Douglas County, Oregon one day.

"Dated March 5, 1956.

"Carl E. Wimberly
Circuit Judge".

The bill of exceptions is a most unusual document. Among other recitals it contains the following:

"The Judge's tone of voice was marked with anger when he stated to the witness, Grady,

" 'Oh, listen. He asked you a question. You give a responsive answer.' and when the Court further stated to the witness Grady,

" 'I am getting tired of this man giving evasive answers. I want the question read to him. I want him to give a responsive answer, if he can; if he can't, let him say so.'

"The appellant's objection to the Court's tone of voice was stated respectfully and was not made in a contemptuous or insolent manner. Attached hereto and made a part hereof is an affivadit of appellant, Spencer W. Yates, marked Exhibit C."

The judge then certified to the correctness of the bill of exceptions including the transcript of the contempt proceedings and the exhibits attached,

"excepting that a disagreement has arisen between appellant's counsel and the Court as to the truth of the statement contained in Lines 1 through 10, page 4, of said Bill of Exceptions and that as to the said recitation the appellant and his counsel aver that said recitation is true and the Court avers that said recitation is false. I further certify that the Affidavit of the appellant, Spencer W. Yates, attached to the Bill of Exceptions is not a proper part of the Bill of Exceptions and accordingly is stricken therefrom; * * *."

On 13 April 1956 Gordon G. Carlson, the law partner of, and attorney for, the defendant Yates, filed an affidavit wherein it was stated that there was a disagreement between defendant's counsel and the Court as to the truth of the statements in the bill of exceptions, quoted supra.

In purported compliance with ORS 19.100(5) and ORS 17.515 both parties filed affidavits in the nature of a bystander's bill of exceptions. The affidavit of Yates supporting the disputed portion of the bill was stricken by the Court. Affidavits supporting the contention of defendant as to the alleged irascible tone of the judge and the respectful manner of the defendant were filed by Carlson and by Grady, the witness. Affidavits of two jurors also specifically supported defendant's contention. Both affiants were certified as "respectable" and "disinterested" by the clerk of the court. See ORS 17.515(2). In addition, the affidavits of twelve of the jurors were filed. Eleven of them described the tone of the judge's voice as "angry", "irritable", "impatient", or "burned up". The affidavit of the twelfth juror was noncommittal. There was no certificate of the clerk of court as to the respectability or disinterestedness of ten of the jurors. The affidavit of defendant Yates was filed on April 5th, the day that the bill of exceptions was certified. The affidavits of Carlson and the two jurors, whose character was certified by the clerk of court, were filed on 13 April, and thus were filed within ten days of certification of the bill of exceptions. The other affidavits were also filed on 13 April. On 23 April, and within ten days of the filing of defendant's affidavits, the trial judge, the official reporter and the bailiff filed affidavits denying that the tone of the trial judge was "irascible" though the judge said that

he was "obliged to sternly admonish" the witness. None of these three affidavits asserted that the objection made by defendant at the trial was discourteous or offensive in manner. The statute requires that

"When a contempt is committed in the immediate view and presence of the court or officer, it may be punished summarily, for which an order must be made reciting the facts as occurring in such immediate view and presence, determining that the person proceeded against is thereby guilty of a contempt, and that he be punished as therein prescribed." ORS 33.030.

■ The decisions of this court establish the rule that judgments of conviction for contempt should be based upon clear and specific findings of fact which should appear either in separate findings or in the judgment itself. *State v. Stillwell,* 80 Or 610, 157 P 970; *State ex rel. v. Bassett,* 166 Or 628, 113 P2d 432, 114 P2d 546; *State ex rel. Hixson v. Hixson,* 199 Or 574, 263 P2d 603; *Ogden v. State,* 3 Neb Unof 886, 93 NW 203; *In re Rotwein,* 291 NY 116, 51 NE2d 669; *Gallagher v. Municipal Court,* 31 Cal2d 784, 192 P2d 905.

■ The only formal findings of fact which were ever entered by the trial court appear in the judgment order. Those findings go no further than to state that a witness was evasive and gave unresponsive answers (a matter which on the record is not wholly clear) and that the defendant made the objection as quoted in the judgment. They contain no finding that the objection was taken in a disrespectful manner, wilfully, or in bad faith, nor is there any finding therein that the tone of the trial judge was not irascible. It is perhaps significant that we have expressed the view that punishment for civil contempt should be restricted to cases in which the violation of a court order is wilful

and with "bad intent". *State ex rel v. McClain et al.,*
136 Or 60, 298 P 213; *Rust v. Pratt,* 157 Or 505, 72 P2d
533; *State ex rel. Grover v. Grover,* 158 Or 635, 77 P2d
430. If an attorney in good faith reasonably believes
it to be his duty to his client to object to apparent
hostile manifestations by a trial judge he has a right
to do so, provided the objection is made in a respectful
manner. And if he has a right to object, he also has a
duty to point out the specific ground of objection.
*Curran v. Superior Court,* 72 Cal App 258, 236 P 975.
We agree that as a general rule any objection based on
this type of alleged prejudicial conduct by the Court
should be taken by counsel out of the hearing of the
jury. *Butler v. United States,* 188 F2d 24. However,
in the pending case counsel had already made a similar
protest to the Court in chambers, apparently without
avail.

The state relies upon *Fitzhugh v. Nirschl,* 77 Or
514, 151 P 735; and *State v. London,* 97 Or 423, 192
P 489, wherein it is held that the statutory require-
ment that affidavits in a bystander's bill must be taken
by the clerk of the court and certified by him is manda-
tory. We have pointed out that two of the affidavits
were so certified. The state also cites *Holman v. State,*
105 Ind 513, 5 NE 556, to the effect that the finding
of the trial judge as to the facts is conclusive, but in
that case no reference is made to any statute such as
ORS 17.515 which expressly authorizes an issue to be
made for decision on appeal when counsel and Court
disagree. The case is not in point. It is apparent that
both parties to this controversy were acting upon the
assumption that the statute authorizing bystanders'
bills of exception was applicable. If that statute was
applicable, then we would be required to disregard the
affidavits of ten of the twelve jurors. We think it

unnecessary to decide whether ORS 17.515 applies in a case such as this of alleged direct contempt. The parties have invoked that procedure and we are content to consider the case as presented. The record indicates, and there is intrinsic evidence to the effect, that defendant made his objection in a respectful manner and we have no reason to find that he was not acting in good faith. There is also evidence in the record of the contempt proceedings which leads us to believe that the trial judge manifested some anger at the defendant. We deem it unnecessary to refer to it further.

We are well aware of the fact that incidents frequently occur in the course of a trial which severely tax the patience of the trial judge, and members of the Bar will do well to refrain from objections of the kind which was made in this case, except in unusual circumstances when they believe in good faith that such an objection is necessary in order to protect substantial rights of a client or witness.

The duties of attorney and judge in the trial of a jury case are reciprocal. It is the positive duty of an attorney to maintain the respect due the court and judicial officer, not for the satisfaction of the individual who sits upon the bench but because of his solemn obligation to uphold the institution which is charged with the duty of administering impartial justice. ORS 9.460; 12 Am Jur 396, Contempt, § 11; Rule 24 of the Rules of Professional Conduct of the Oregon State Bar. On the other hand, similar duties are imposed upon judges. We quote pertinent excerpts from the Canons of Judicial Ethics which were adopted by the Oregon State Bar and approved by this court:

"He should be temperate, attentive, patient, impartial, * * *.

"He should be courteous to counsel, especially

to those who are young and inexperienced, and also to all others appearing or concerned in the administration of justice in the court.

"* * * he should bear in mind that his undue interference, impatience or participation in the examination of witnesses, or a severe attitude on his part toward witnesses * * * may tend to prevent the proper presentation of the cause, or the ascertainment of the truth in relation thereto.

"* * * In addressing counsel, litigants or witnesses, he should avoid a controversial manner or tone." Canons of Judicial Ethics, Rules 5, 10, 15, pp 67, 69, 72.

See also, *United States v. Andolschek,* 142 F2d 503, 507 (opinion by Judge Learned Hand); *Sprinkle v. Davis,* 111 F2d 925, 128 ALR 1101; *Shepard v. Brewer,* 248 Mo 133, 154 SW 116; 88 CJS 126, Trial, § 49(2).

It should be added that an attorney has a duty, not only to the Court, but also to his client, to preserve his client's rights by making appropriate objections to any remark of the Court which reasonably, in his opinion, tends to prejudice his client's case in the minds of the jurors. *Curran v. Superior Court,* supra; *Gallagher v. Municipal Court,* supra; *Sacher v. United States,* 343 US 1, 96 L ed 717; *In re Cottingham,* 66 Colo 335, 182 P 2.

We are unanimously of the opinion that the judgment of conviction should be reversed and the case dismissed. It is so ordered.

WARNER, C. J., did not participate in this decision.