Submitted on record and briefs August 17, reversed and remanded
December 29, 1967, petition for rehearing denied
January 23, 1968

# STATE OF OREGON, *Respondent, v.*
# GERALD O'MALLEY, *Appellant.*
### 435 P. 2d 812

On the brief for appellant were McCarty & Rosacker, Portland.

On the brief for respondent was H. Clifford Looney, District Attorney, Vale.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

HOLMAN, J.

This is an appeal from a judgment of contempt for failure to appear while under subpoena as a witness in a criminal case. Contemnor was sentenced to pay a fine of $150 and to 15 days imprisonment.

On Wednesday, December 7, 1966, the contemnor was served in the City of Ontario in Malheur County with a subpoena out of the circuit court of that county requiring him to appear as a witness in Vale on Monday, December 12 at 9:30 a.m. in the case of *State v. Dorsey Miller*. Contemnor failed to appear. On the previous day, December 6, the contemnor had been served in the same city and county with a subpoena out of the circuit court of Baker County requiring him to appear as a witness in Baker City on Monday, December 12 at 9:30 a.m. in the case of *State v. Apodoca.*

Dorsey Miller, the defendant in the Malheur prosecution, was contemnor's employer. Contemnor had testified with respect to the Miller prosecution before the grand jury in Malheur County. Because of the

time differential between Mountain Time in Vale and Pacific Time in Baker City, the court in Vale was scheduled to convene one hour before the court in Baker City. The distance from the seat of the Malheur court, Vale, to that of the Baker court, Baker City, is about 90 miles by highway. The distance from Ontario, where defendant was served with process, to Vale is about 16 miles. Without notifying the Malheur court in any way until after the hour for his appearance, contemnor took a bus to Baker and appeared there.

██ In contemnor's first assignment of error, he contends that the affidavit initiating the contempt proceeding does not state facts sufficient to constitute an indirect contempt. Contemnor first argues that the subpoena, which is incorporated in the affidavit, shows on its face that it is invalid because it is signed "H. Clifford Looney, Deputy District Attorney of Malheur County." He contends that ORS 139.040 and 139.070(2) have not been complied with because the name of the district attorney nowhere appeared on the subpoena. These statutes provide that the "District Attorney may issue subpoenas." However, ORS 8.780 provides that a deputy district attorney, though subject to the direction of the district attorney, has the same functions as his superior. In issuing process in criminal matters a deputy is presumed to be acting subject to the direction of the district attorney until the contrary is shown. The words "Deputy District Attorney of Malheur County" informed the contemnor that the subpoena was issued under the authority of the district attorney.

██ Contemnor next urges that the affidavit fails to "include the element of intentional disregard of the required behaviour." Contemnor must have over-

looked the allegation in the affidavit that "he will-fully failed to appear." In a contempt proceeding, willfully means "with a bad intent." *State ex rel. Grover v. Grover,* 158 Or 635, 639, 77 P2d 430 (1938).

Contemnor next contends that the proof is insuffi-cient to sustain a finding of willfullness in failing to appear. He argues that it was impossible for him to appear in Vale and Baker City at substantially the same time, and therefore he was only required to honor the subpoena first served upon him and appear in Baker. He relies upon the case of *Icehour v. Martin,* 44 N C 478, (1853), which appears to be the only case with facts similar to those here. In *Martin* the contemnor was subpoenaed to appear in the courts of two counties on the same day. However, in *Martin* the court found that compliance with both subpoenas would have been "impossible." Since 1853, means of travel and communication have improved drastically. There-fore, *Martin* is no longer necessarily controlling.

■ "The process of subpoena demands great and ex-traordinary effort, on the part of the witness, to obey. * * *" *The People v. Davis,* 15 Wendell 602, 608 (N Y S Ct 1836). This kind of effort requires a per-son under subpoena to make a reasonable effort to contact the court or officer issuing the subpoena if, for some reason he deems legitimate, the person be-lieves appearance at the appointed time is impractical or impossible. There are two reasons for this re-quirement. First, the person subpoenaed cannot be certain appearance is impractical or impossible until the court or officer issuing the subpoena is alerted to the possibility that the witness may not appear. It may be that compliance can be arranged at a time possible for all. Second, the same thing can happen that occurred in the case in which contemnor failed

to appear. The litigant who has procured the issuance of the subpoena, and who has no notice of the non-appearance, will have his case dismissed for insufficient evidence. The administration of justice is the concern of everyone and requires no less than a maximum effort by all citizens. Had contemnor made the slightest effort, he could have informed the authorities of the conflict, and the times for appearance could have been adjusted. He did not actually testify in the Baker City trial until one week after his appearance there. He chose to keep still and take the chance that the conflicting subpoena would excuse him from testifying against his employer. A person who seeks to satisfy the court that his failure to obey an order was due entirely to inability to render obedience, without fault on his part, must prove such inability. 17 Am Jur 2d 54, Contempts, § 51. Contemnor failed to so prove.

The plausibility of contemnor's position is based upon the fact that he could not be in both courts at substantially the same time and upon the position that the subpoenas placed no duty upon him to do anything but to respond to one subpoena or the other. Contemnor knew the purpose of the subpoenas was to require him to give testimony. Excusing him from non-compliance because he could not be in both courts at substantially the same time is defining his duty too narrowly. There was an obvious possibility of substantial compliance—compliance that would allow him to give testimony in both courts during the respective trials—therefore, it was his duty to ascertain if he could do so. This involved contacting the authorities and informing them of the conflict. If he failed to so ascertain and if the facts indicated the probability that he would have been able to appear in both places, had

he done so, he is guilty of failing to appear because he failed to make the great and extraordinary effort which the law requires.

■ Contemnor testified that he thought he was only required to honor the first subpoena served upon him. Had his failure to make every effort to comply been innocent or inadvertent, failure to appear would not have been willful, but there was sufficient evidence for the court to find that his failure to make such an effort—and therefore his resultant failure to be able to appear—was neither. He testified that he was served on Wednesday and that he put the subpoena in his pocket without looking at it, nor did he look at it the following day. He did not say when he finally did look at the subpoena but testified that on Sunday afternoon he wrote a letter to the court informing it that he had to go to Baker. He enclosed a photocopy of the Baker subpoena with the letter and gave it to a messenger at about 6 o'clock Sunday evening for delivery. He did not say where he got the photocopy. The message was subsequently delivered to the court during the first recess Monday morning. A telephone call was then made to Baker and contemnor was informed they were awaiting him in Vale. Contemnor claims he had no transportation. This is evidence from which the court could find that contemnor was conscious of an obligation to inform the court of his situation and that he did not do so until he was sure that it was impossible for him to comply. His testimony concerning not looking at the subpoena until at least the second day after the one on which he was served is more than slightly incredible. If he was guilty of bad faith it cannot be said he is being punished for something he did not know to be wrong.

■ Contemnor next assigns as error the refusal of

the court to order the production of the minutes of the contemnor's grand jury testimony with respect to the Miller prosecution. During the hearing in the present proceeding the deputy district attorney testified to contemnor's testimony before the grand jury. The deputy district attorney was asked if he had the grand jury testimony in his file. His response was that he did not. When asked if he would produce it, without any further remarks by the witness, the court ruled it would not be necessary to produce the testimony. The obvious purpose of the request was to ascertain whether the deputy's account of contemnor's testimony was accurate. However, there is no showing of prejudice. The record does not disclose that a transcript of the testimony existed and we will not presume that it does. In the absence of the presence of a court reporter, pursuant to court order as provided by ORS 132.090(1), there would be no testimony to produce.

█ Contemnor next complains that the court took an active part in questioning the witness and that this was not proper. The court is the trier of the facts and was entitled to question any witness in an attempt to elicit relevant information. A trial is more than a contest between lawyers; it is a search for truth. A judge has a legitimate interest in the ascertainment of the truth and is more than a disinterested umpire who determines the admissibility of evidence when the lawyers can't agree.

█ Contemnor next contends that the findings of fact were insufficient to support a finding of contempt. First, he argues there is no finding that he failed to appear as required. The findings of fact include the following statement: "* * * the defendant did absolutely nothing to contact the above-entitled court * * * after service of the Command to Appear."

If he did not contact the court, he could not have appeared.

■ Contemnor next contends that there is no finding that his failure to appear was willful or with bad intent. With this we agree. There is no such finding and in its absence the findings will not sustain a contempt. *State v. Yates,* 208 Or 491, 302 P2d 719 (1956). It is not clear from the record why the court made no such written finding. In his oral decision rendered at the completion of the testimony, the trial judge stated:

> "* * * So I must find that you just did not want to appear and testify in the case involving your employer. I must find that that was a deliberate and willful contempt and, for your deliberate and willful disobedience of that subpoena, I do hold you in contempt of Court."

The judge may have changed his mind and decided contemnor's failure to appear was not willful. However, the judge found contemnor guilty, which is inconsistent with such a theory. It is more probable that the omission of a finding of willfullness was inadvertent. In any event, findings which do not include a finding that contemnor's failure to appear was willful, are insufficient to sustain guilt. *State of Oregon v. Yates,* supra. The judgment of the trial court must therefore be reversed.

It does not necessarily follow, however, that the proceeding should be dismissed. This court many times has remanded cases to the trial court for the entry of findings where none had been entered. *Wald v. Wald,* 239 Or 351, 397 P2d 541 (1964); *Tully v. Tully,* 213 Or 124, 322 P2d 1085 (1958); *State ex rel. v. Bassett,* 166 Or 628, 113 P2d 432, 114 P2d 546 (1941); *Glickman v. Solomon,* 140 Or 358, 363-4, 12

P2d 1017 (1932). In *Larsen v. Martin,* 172 Or 605, 143 P2d 239 (1943), it was held that where the findings were so ambiguous that they would not support the judgment, the proper procedure was to remand the case to the trial court for entry of new findings. In *Howard v. Klamath County,* 188 Or 205, 215 P2d 362 (1950), there is dictum to the effect that if findings are ambiguous and incomplete the remedy is to remand the case with instructions to make further findings responsive to all the material issues.

■ Whether contemnor's failure to appear was willful was the principal issue in the proceeding and no finding was made thereon. Certainly the sum total of the record results in ambiguity. A finding, one way or the other, should have been made. The judgment of the trial court is reversed and the matter is remanded for the purpose of entering a finding on whether contemnor's failure to appear was willful. If contemnor's failure is found to be willful, a new judgment of guilt and sentence should be entered; if not, the proceeding should be dismissed.

McALLISTER, J., dissenting.

The result reached by the majority is so shocking that I am impelled to dissent.

The facts are simple. On December 6, 1966, the defendant was served at Ontario, in Malheur county, with a subpoena commanding him to appear in the circuit court for Baker county at Baker, the county seat of said county, at 9:30 a.m., on December 12, 1966. On the following day, December 7, 1966, defendant was served with a second subpoena which commanded him to appear in the circuit court for Malheur county at Vale, the county seat of said county, also at 9:30 a.m., on December 12, 1966. Defendant re-

sponded to the command of the first subpoena served on him and appeared at Baker, where he was required to remain in attendance on the court for nearly a week.

Vale and Baker are 90 miles apart. Vale is in the Mountain Time zone and Baker in the Pacific Time zone. In spite of this time differential, defendant could not have been in both courts at the same time. This is not a case in which defendant must prove his inability to comply with a subpoena. Defendant's inability to comply with one subpoena or the other was conceded in the court below, and is taken for granted by this court. The findings in the court below contain not the slightest suggestion that defendant responded to the wrong subpoena. Neither does this court criticize defendant's choice to respond to the first subpoena served on him.

The citation served on the defendant in the court below commanded him to appear to show cause why he should not be held in contempt,

"in failing to comply with the command to appear issued from the above-entitled court [Malheur] on the 7th day of December, 1966."

Since it is conceded that defendant was unable to obey the command to appear in Malheur county, the contempt proceeding should have been dismissed without further ado. All courts hold that inability of the alleged contemnor without fault on his part to obey a court order is a complete defense to a charge of contempt for such failure to obey. *State ex rel v. Blackwell*, 181 Or 157, 179 P2d 278, 179 P2d 1023 (1947); Anno. 120 ALR 703, and prior annotations listed therein.

Since defendant was not convicted of the contempt with which he was charged, let us see of what charge

he has been convicted. The defendant has been found guilty of failing to give notice in advance that he was unable to comply with the Malheur county subpoena. There is not a word about this crime in the order to show cause, or in the citation served on defendant. The first time the defendant heard of the crime of failing to give notice was when he heard his guilt proclaimed in the court below. It is passing strange that this court, which turned loose a man who had stolen a steer because he was charged with stealing a heifer,[①] should now send a man to jail for a crime not even mentioned in the charge against him.

The real shocker is the lack of any law, statutory or judicial, making it a crime to fail to give notice in advance of inability to comply with a subpoena. The subpoena itself did not request or direct defendant to notify the court if he was unable to comply with its command. No statute requires a citizen to notify the court that he is unable to comply with a subpoena served on him. And neither this court, nor any other court of which I am aware, has ever laid down a rule that a citizen served with a subpoena must give notice in advance if he is unable to attend at the appointed time and place. There are no common law crimes in Oregon. *Mult. Co. Fair Ass'n v. Langley,* 140 Or 172, 175, 13 P2d 354 (1932); *State v. Gaunt,* 13 Or 115, 120, 9 P 55 (1885); *State v. Vowels,* 4 Or 324, 326 (1873). Since conduct is criminal only when declared so by statute, this court has no power, inherent or otherwise, to declare that failure to give notice in advance of inability to comply with a subpoena is criminal conduct.

Neither may a circuit judge punish as an indirect contempt a failure to give notice in advance of inability to obey a subpoena. We recently held that the

---

① State v. Russell, 231 Or 317, 372 P2d 770 (1962).

legislature may limit the power of a non-constitutional court to punish for indirect contempt.[2] The circuit court is a statutory court. The legislature has limited the power of a statutory court to punish for indirect contempt to the cases and in the manner "provided by statute." ORS 1.250. The acts or omissions which constitute contempts are listed in detail in ORS 33.010,[3] and include disobedience of a subpoena. The list does not include the failure to notify in advance of inability to obey a subpoena. If the legislature added that act to the list and attempted to apply the statute retroactively to defendant, this court would strike it down as an *ex post facto* law. *Ex post facto* laws are forbidden by our constitution.[4]

This court is now adopting a rule making it a crime, punishable by fine or imprisonment, to fail to give notice in advance of inability to comply with a subpoena, and is applying the rule *ex post facto* to the conduct of the defendant. Why should this court do what it would not permit the legislature to do?

The courts were created to protect the citizens from oppression. If a citizen is oppressed by the courts, to whom can he turn for help.

I dissent.

PERRY, C. J., and O'CONNELL, J., join in this dissent.

---

[2] State ex rel Oregon State Bar v. Lenske, 243 Or 477, 493–496, 405 P2d 510, 407 P2d 250, cert. den. 384 US 943, 86 S Ct 1460, 16 LEd2d 541, reh. den. 384 US 1028, 86 S Ct 1920, 16 LEd2d 1047 (1966).

[3] ORS 33.010. "(1) The following acts or omissions, in respect to a court of justice, or proceedings therein, are contempts of the authority of the court:

"* * * * *

"(j) Disobedience of a subpoena duly served, * * *."

[4] Art. I § 21. "No *ex-post facto* law, * * * shall ever be passed, * * *."