Argued November 3, reversed December 28, 1977
See also 280 Or 693

STATE ex rel OREGON STATE BAR,
*Respondent,*
*v.*
WRIGHT, *Appellant.*
(TC 76-1522, SC 25003)
573 P2d 294

Robert J. Wright, Noti, argued the cause and filed a brief in propria persona.

Paul D. Clayton, of Luvaas, Cobb, Richards & Fraser, Eugene, argued the cause and filed the brief for respondent.

*Before Holman, Presiding Justice, and Tongue, Howell, Bryson, Lent and Linde, Justices.

TONGUE, J.

**TONGUE, J.**

This is an appeal from an order finding defendant to be in willful contempt of a temporary injunction which restrained and enjoined defendant from engaging in the practice of law, including "furnishing legal advice," during the pendency of a suit for a permanent injunction to restrain defendant from engaging in the unauthorized practice of law. In that case, *Oregon State Bar v. Wright,* 280 Or 693, 573 P2d 283 (1977), this court today affirmed, with some modifications, the permanent injunction as entered by the trial court.

In defendant's separate appeal in these contempt proceedings it is contended, among other things, that "[t]he Court erred in its consideration of the evidence" in that there was insufficient evidence to support the order finding him to be in willful contempt of the temporary injunction.

That order is as follows:

"Defendant is found to be in willful contempt of the said Order dated April 22, 1976, in that the Defendant did furnish legal advice to Glen Chamberlain, et ux, in the matter of *In the Conservatorship of Mary Smeed,* case number 22920, and for such contempt the Defendant is hereby fined the sum of $300.00 to be paid on or before January 3, 1977." (Emphasis theirs)

This court has held that in a contempt proceeding for "disobedience of any lawful judgment, decree, order or process of the court," as provided by ORS 33.010(1)(e), there must be evidence sufficient to support a finding that such a violation was "willful" and that "punishment for civil contempt should be restricted to cases in which the violation of a court order is willful and with 'bad intent.'" *See State of Oregon v. Yates,* 208 Or 491, 498-99, 302 P2d 719 (1956), and cases cited therein. *See also State v. O'Malley,* 248 Or 601, 605, 435 P2d 812 (1967), overruled on other grounds 255 Or 544, 546, 469 P2d 36 (1970).

After reviewing the record in this case, we are of the opinion that the evidence was insufficient to support a finding by the trial court that the violation by defendant of the previous order by that court was "willful and with bad intent."

On March 22, 1976, a complaint was filed by the Oregon State Bar in the Circuit Court for Linn County alleging that defendant was engaging in the unauthorized practice of law and praying for a decree permanently enjoining defendant from doing so. On the same date the Oregon State Bar filed a motion for an order requiring defendant to appear and show cause why he should not be temporarily enjoined from engaging in the practice of law during the pendency of that suit. On April 22, 1976, after a hearing on that motion, such a temporary injunction was entered enjoining defendant, among other things, from "furnishing legal advice" during the pendency of that case.

On October 21, 1976, one of the attorneys for the Oregon State Bar filed an affidavit attaching testimony of Mary Smeed and Emily Chamberlain *In the Matter of the Conservatorship of Mary Smeed* and stating the opinion that "there is sufficient basis for the Defendant to appear and show cause why he should not be held in contempt of the order entered on April 22, 1976." Such an order to appear and show cause was then entered and such a hearing was held on December 20, 1976.

At the hearing, in response to a question by defendant as to the basis upon which it was contended that defendant had engaged in the practice of law by "giving legal advice," the attorney for the Oregon State Bar made the following statement:

"* * * [T]he people are elderly, first of all. And he came to you for advice on a legal matter. They requested to get legal advice from you as to what they should do. You informed them that they should file a motion to quash in the case. And that in my opinion constitutes giving legal advice to them. You then in addition to that

[ 716 ]

mailed, apparently, a form to Mr. Chamberlain showing him what type of form to use. And you discussed with them only a motion to quash. You then sent Mr. Chamberlain in effect as your own agent, so to speak, to the library, where he located apparently a motion. And prepared it and filed it. But you were the one that advised him as to what to do and what type of motion to file. Now, you're asking me these questions. And so therefore, I'll answer them. And in my opinion you advised them to file a particular type of motion, constitutes giving legal advice."

In support of that contention the Oregon State Bar offered the testimony of Emily Chamberlain and Glen Chamberlain. Emily Chamberlain testified that her sister, Mary Smeed, was in a nursing home; that proceedings had been filed to appoint a conservator for her sister and that neither she nor her sister wanted a conservator appointed.

Her husband, Glen Chamberlain, testified that he was then taking a "law course" from defendant to learn how to study law and go to the law library and study cases and that he had paid $150 to defendant for that course. There was also other evidence that defendant was then teaching a course in "self-representation," i.e., "how a person could represent himself in a court of law."

Mrs. Chamberlain testified that she and her husband went to see defendant because her husband had "searched law books and things" and "didn't know just how to put things into court"; and that she and her husband were friends of defendant and "wanted some advice from Mr. Wright as to how to handle it in court."

She also testified that upon going to see defendant he told them that there was an injunction against him prohibiting him from giving legal advice and that "he told us he couldn't help us. Only to tell us how to handle it. And we did the rest"; and "he advised us how to do it"; that his advice was "simply to show [her]

husband where he could find the proper forms to use" and that he showed her husband "a form" which "he had used" and which was a motion to quash.

Mr. Chamberlain testified that when he and his wife went to see the defendant he told them that "he wouldn't be able to represent us or help us. And he told me a lot of books down here in the courthouse library. Go down and look at them." Mr Chamberlain also testified that defendant "had a form there in his office that he showed you" and that it was a motion to quash and told them that "he had used it in the court * * * and the court had ruled in his favor. So he must have done something right" and that defendant gave that form to him, but told him that "I'd have to use my own words and my own language"; and that defendant showed him some form books and told him what books to look for in the law library, and to "look at these forms in the library down here. Make out my own thing." Mr. Chamberlain testified further that he went to the law library; that the advice from defendant "consisted primarily of showing [him] where to find the forms that [he] used"; and that defendant did not make any charge for that "conversation."

Plaintiff also offered in evidence a letter from defendant to Mr. Chamberlain stating that he was enclosing "a sample of what a motion to quash looks like * * *. Follow this form, and I am sure you will have no trouble in acting as your own attorney," but that "you must do your own typing and use your own judgment. All I can do is show you the forms they use."[1]

Defendant did not testify on his own behalf and refused to answer questions when called as a witness

[1] Plaintiff's brief calls attention to further testimony that the motion to quash, as filed by Mr. Chamberlain, contained a "case citation" that he included because the defendant "thought it pertained" to the pending conservatorship case. This, however, was not included in the statement by plaintiff's attorney at the time of trial setting forth the reasons and basis upon which it was contended at that time that defendant had practiced law by "giving legal advice."

[ 718 ]

by plaintiff, claiming that to do so would violate his constitutional privilege against self-incrimination.

At the conclusion of the hearing the trial judge, in an oral opinion, stated that "I do find that you did in fact furnish legal advice to the Chamberlains * * * that by doing such, you were knowledgeable of and aware of the temporary restraining order"; that defendant was "in contempt" of that order, and that based upon this "willful contempt" the court was levying a fine of $300. As previously stated, the subsequent written order also stated that "defendant is found to be in willful contempt of the temporary restraining order" in that he "did furnish legal advice" to Mr. and Mrs. Chamberlain.

■ We agree with the finding by the trial court that in suggesting to Mr. and Mrs. Chamberlain that they file a motion to quash in the conservatorship proceedings and in giving them a form for such a motion, the defendant gave legal advice to them in violation of the terms of the temporary restraining order.

It may be that defendant was within his rights in conducting a "law course" with instruction in "self-representation." When, however, he undertook to recommend to persons enrolled in that course that they select particular forms for use in solving their particular legal problems defendant was, in fact, giving legal advice and was engaging in the unauthorized practice of law, for which he should be enjoined by the courts. In this respect, this case is not unlike that of *Oregon State Bar v. Gilchrist,* 272 Or 552, 538 P2d 913 (1975), involving the sale of "do-it-yourself divorce kits," containing a manual for divorce, with forms and instructions designed to enable a person to complete and file the forms necessary to secure a dissolution of marriage. In that case we held (at 563-64) that:

> "* * * [I]n the advertising and selling of their divorce kits the defendants are not engaged in the practice of law and may not be enjoined from engaging in that part of their business. We further conclude, however, that all

personal contact between defendants and their customers in the nature of consultation, explanation, recommendation or advice or other assistance in selecting particular forms, in filling out any part of the forms, or suggesting or advising how the forms should be used in solving the particular customer's marital problems does constitute the practice of law and must be and is strictly enjoined."

*Cf. State Bar v. Security Escrows, Inc.,* 233 Or 80, 92-93, 377 P2d 334 (1962).

■ We hold, however, that the evidence in this case was insufficient to support the necessary finding in such a case that such conduct by this defendant, although in violation of the temporary restraining order, was "willful and with bad intent," as held to be necessary in such cases in *State of Oregon v. Yates, supra,* and in *State v. O'Malley, supra.*

On the contrary, and despite the fact that there was evidence that defendant was "aware" of the temporary restraining order and was "knowledgeable" of the fact that it prohibited him from giving legal advice, as held by the trial court, we do not believe that the evidence was sufficient to prove that in giving to Mr. and Mrs. Chamberlain a form for a motion to quash, as previously used by him, and by suggesting that they prepare a similar motion in their own words, after telling them that he could not represent or "help" them, the defendant acted willfully and with a bad intent to violate the terms of that order.

We do not believe that the evidence in this case was sufficient to support such a finding for the purposes of a proceeding for contempt of court. It may be that in doing so defendant acted "willfully and with bad intent." He is entitled, however, to the benefit of the presumption that he acted in good faith. We do not believe that the evidence was sufficient to overcome that presumption.

Now that it has been made clear to this defendant by the decision of this court, however, that such

conduct does constitute the giving of legal advice, and as such, the unauthorized practice of law, he can have no such defense in the event of any future repetition of such conduct, for which he may be properly held in contempt not of the temporary restraining order, but of the terms of the permanent injunction as affirmed (with some modifications) in the case of *Oregon State Bar v. Wright, supra,* decided this day.[2]

For these reasons, the order of the trial court in this case holding defendant to be in contempt of the temporary restraining order and imposing upon him a fine of $300 is reversed.

Reversed. Costs to appellant.

---

[2] Because of the basis upon which we decide this case we need not consider defendant's further contentions, including the contention that the trial court erred in denying his request for a trial by jury in this case and that the temporary restraining order was invalid because of the failure of the Oregon State Bar to file an undertaking.