Argued April 15; reversed May 13; objections to cost bill sustained
June 24, 1941

STATE ex rel. BASSETT *v.* BASSETT

(113 P. (2d) 432, 114 P. (2d) 546)

Before Kelly, Chïef Justice, and Bailey, Lusk, Rand and Rossman, Associate Justices.

*George A. Rhoten,* of Salem (E. M. Page, of Salem, on the brief), for appellant.

*O. A. Neal,* of Portland (W. W. McKinney, of Salem, on the brief), for respondent.

LUSK, J. This is an appeal from an order adjudging the defendant in contempt for refusing to comply

with the decree of the circuit court for Marion county requiring the defendant to contribute to the support of his minor children.

In 1930 that court granted the relatrix, Hope Bassett, a decree of divorce from the defendant, Raymond H. Bassett, the appellant here, and by such decree ordered him to pay to the relatrix the sum of $100 per month for the support and maintenance of their three minor children. In 1932, the amount of such monthly payments was, by order of the court, reduced to $50.

On May 6, 1940, the relatrix and the district attorney for Marion county filed a motion "for an order of citation to be served upon the defendant herein to show cause why the defendant should not comply with the order of this court made and entered on the 6th day of September, 1932, requiring said defendant to pay monthly towards the support and care of the minor children of relator and defendant the sum of $50.00 per month". This motion was supported by the affidavit of the relatrix, which showed that the defendant was able to comply with the court's decree but had not done so, and that he was in default in the amount of $470.

Based upon the motion and affidavit, the court, on May 2, 1940, issued an order that the defendant "be and he is hereby required and cited to appear in the Circuit Court of the State of Oregon, for the County of Marion, Department No. 2, in the court room thereof in Salem, Marion County, Oregon, on the 21st day of May, 1940, at the hour of 10 o'clock a. m. of said day, to then and there show just cause why he had not fulfilled the order of the Court to pay said sum of $50.00 per month to said relator for the support of said minor children."

On May 2, 1940, a citation issued accordingly, directed to the defendant, Raymond H. Bassett, and citing him to appear at the time and place aforesaid, "then and there to show cause why you have not complied with the order of this Court under date of September 6, 1932, requiring you to pay to relator herein the sum of $50.00 per month for the care and support of your minor children." The citation, together with duly certified copies of the relatrix' motion and affidavit, and of the order for the issuance of citation, were served upon the defendant by the sheriff of Marion county on May 6, 1940. On May 21, 1940, the defendant filed a counter-affidavit.

The case came on to be tried before the Hon. Earl C. Latourette, Judge of the Fifth Judicial District, on May 24, 1940, the parties appearing in person and by their attorneys, and the court, after hearing the testimony of witnesses, on the 7th day of June, 1940, entered an order as follows:

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED that said defendant be and he is hereby held in contempt of this Court for failure to pay moneys for the support of the above named children;

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that said defendant shall be purged of said contempt upon his paying to the Clerk of this Court the sum of $300.60 within 10 days from said 24th day of May, 1940."

The court made no findings of fact.

On July 2, 1940, the court entered an order in which, after reciting that the defendant had not paid the sum of $300.60 or any part thereof except the sum of $10 and was still in contempt, it was ordered and adjudged that the defendant be punished for said contempt by imprisonment in the county jail of the county of

Marion, state of Oregon, for a term not to exceed 30 days. The defendant, however, was granted a further period of 10 days in which to purge himself of contempt by paying the sum of $290.60 to the relatrix. The defendant did not avail himself of this opportunity, but instead prosecuted an appeal from the judgment, and the case is before us on assignments of error which will now be discussed.

The first assignment of error challenges the sufficiency of the motion and affidavit, the order for the issuance of a citation, and the citation, on the ground that none of these documents indicates that the purpose of the proceeding was to cite the defendant for contempt of court or to require of him anything further than that he show cause why he "should not comply with the order of the court" or why he had "not complied with the order of the court". It is argued that the statute, § 11-504, O. C. L. A., provides that in cases of indirect contempts "before any proceedings can be taken therein, the facts constituting the contempt must be shown by an afidavit presented to the court or judicial officer, and thereupon such court or officer may either make an order upon the person charged to show cause why he should not be arrested to answer, or issue a warrant of arrest to bring such person to answer in the first instance"; but that in this proceeding the court neither issued a warrant for the defendant's arrest nor, by the citation which was issued, ordered him to show cause why he should not be arrested.

■ The record fails to disclose that the defendant raised this question in the court below. On the contrary, he responded to the citation by filing an affidavit, and came into court and presented his defense on the merits. Whatever might have been the weight

of the objection had it been made *in limine*, we think it has none when reserved until after the case has reached the appellate court.

§ 11-504, O. C. L. A., provides:

"The affidavit shall be sufficient if it set forth the facts constituting the contempt, and need not contain recitals of matters already appearing in the record of any action, suit or proceeding in which the person charged with contempt has been personally served with process."

■■■ By necessary implication from the language of the statute, the affidavit, which is regarded as the initiatory pleading (*State ex rel. v. Seiber*, 49 Or. 1, 88 P. 313), suffices to confer jurisdiction on the court provided it sets forth "the facts constituting the contempt". See, *State ex rel. v. Rogers*, 124 Or. 656, 265 P. 784. Thereafter the court, in its discretion, may issue an order to show cause or may allow the issuance of an order of arrest in the first instance. *State ex rel. v. Seiber*, supra. The court did not pursue the latter course but the former, and the whole contention of the defendant comes to this: that the court lacked jurisdiction because the defendant was not in terms notified by the proceedings taken that they might result in a judgment of contempt. But the affidavit, a copy of which was served upon the defendant with the citation, "set forth the facts constituting the contempt", and was clearly sufficient to charge the defendant, who had been personally served with process in the divorce suit, with wilful disobedience of the court's decree. *State ex rel. v. LaFollette*, 132 Or. 257, 284 P. 283; *State ex rel. v. Rogers*, supra. The court therefore acquired jurisdiction to proceed. The defendant was advised of the nature of the charge against him and, therefore, of the legal consequences which might follow

from the proof of the facts alleged. He surely did not think that it was mere idle curiosity which prompted the court to issue a citation requiring him "to show cause why you have not complied with the order of this court", and he could have been under no illusions as to the purpose of the proceeding. By appearing and filing his affidavit and defending himself, he waived his objection to the technical defects of which he now complains. Even though no citation whatever had been served upon him, he would, in the circumstances here shown, have been in no position to contest the court's jurisdiction. 12 Am. Jur., Contempt, 437, § 69; *Ex parte Miller*, 129 Ala. 130, 30 So. 611, 87 Am. St. Rep. 49; *Poindexter v. State*, 109 Ark. 179, 159 S. W. 197, 46 L. R. A. (N. S.) 517.

The second assignment of error is predicated upon the court's denial of the defendant's request that the court make specific findings of fact and conclusions of law. § 5-502, O. C. L. A., provides in part:

"Upon the trial of an issue of fact by the court, its decision shall be given in writing, and filed with the clerk during the term or within twenty days thereafter. The decision shall consist of either general or special findings without argument or reason therefor. All parties appearing in the case shall have the right to request either special or general findings * * *"

By the construction given this statute in *Ervast v. Sterling*, 156 Or. 432, 437, 68 P. (2d) 137, the trial court, notwithstanding the defendant's request for special findings, was invested with discretion to make either general or special findings. The mandatory provisions of the statute, however, impose the duty of making findings of some sort, and this the court failed to do.

The question whether, regardless of statutory provisions, findings of fact are essential to the validity

of a judgment of contempt is one upon which there is contrariety of judicial opinion. This court has not heretofore directly ruled on the question. In *State ex rel. v. Seiber*, supra, the judgment was attacked on the ground that there were no findings of fact to support it, but the question was not considered as the case was reversed upon other grounds, the court saying "that any doubts on that subject can be removed by making findings". The point was again raised in *State ex rel. v. Stillwell*, 80 Or. 610, 157 P. 70, and there it was said that the better practice would appear to require findings of fact to be made, citing *Hoffman v. Hoffman*, 26 S. D. 34, 127 N. W. 478, Ann. Cas. 1913 A, 956, 30 L. R. A. (N. S.) 564. In the Stillwell case, which was contempt for disobedience of a provision of a divorce decree, it was held that, since the findings did not embrace every issue of fact and especially failed to show that the defendant was personally served in Oregon with a copy of the summons in the divorce suit, the judgment of conviction should be reversed.

The present state of the law is thus summarized in 12 Am. Jur., Contempt, 443, § 78:

"It seems that it is the general rule in England that the facts constituting contempt need not be set out in the record, and there are authorities in this country holding that a judgment or sentence for contempt is valid without any recital of facts upon which it is based where there are moving papers which contain the facts. There is, however, a decided tendency toward adopting a rule, which obviously serves the surer end of justice, that a court should make a finding of facts. In some jurisdictions the duty of the court depends on whether the contempt is a direct or constructive one. It is only in contempts committed in the immediate view and presence of the judge at chambers —that is, direct contempts—where punishment is summarily inflicted, that it is necessary for the judgment

to recite the facts constituting the contempt. Where the contempts are not committed in the immediate view and presence of the court or judge at chambers—that is, constructive contempts—since in such cases affidavits must be presented setting forth the facts constituting the contempts, it is not necessary that the judgment recite them. A statement filed by the judge as to matters occurring before him is usually regarded as importing absolute verity. It has been held that the order of commitment must set out the offense specifically, that all the proceedings which led to the conviction need not be recited, but that all proceedings necessary for its validity should be set forth. The judgment must show affirmatively the defendant's ability to comply with the order of the court.''

█ While, as indicated by the text quoted, some courts have made a distinction between direct contempts, which ordinarily are tried summarily without pleadings of any sort, and indirect or constructive contempts, yet even as to the latter the weight of judicial opinion, we think, supports the view that findings of fact, either separately made or incorporated in the judgment, are essential to the validity of the proceedings. *Hoffman v. Hoffman*, supra, cited by this court in the Stillwell case, was a case of indirect contempt in which the court held the judgment was invalid because no findings had been made. We quote from the opinion:

''And we may well say that, in conformity with the spirit of this statute and in view of the unusual nature of contempt proceedings, and, further, in order to carefully guard the rights of our citizens, no court should render any judgment punishing one for contempt of such court without, either by separate findings of fact or by incorporating findings in the judgment itself, clearly and specifically finding the facts upon which the judgment of the court is based.''

To the like effect are *State ex rel. v. Plese*, 134,
Wash. 433, 235 P. 961; *Ex parte Burns*, 83 Mont. 200,
271 P. 439; *State v. Galloway*, 5 Cold. 326, 98 Am. Dec.
404; *State v. Bartholomew*, 85 Utah 94, 38 P. (2d) 753;
*Van Hoosear v. Railroad Commission*, 189 Cal. 228,
207 P. 903; *In the matter of Mackay*, 140 Cal. App. 400,
35 P. (2d) 385; *Merritt v. Superior Court*, 93 Cal. App.
177, 269 P. 547; *Bakeman v. Superior Court*, 37 Cal.
App. 785, 174 P. 911; *Ex parte Fuller*, 330 Mo. 371, 378,
50 S. W. (2d) 654; *Crowder v. Hayse*, 9 Tenn. App. 55,
62; *Kanter v. Clerk of Circuit Court*, 108 Ill. App. 287,
303. The Tennessee, California and Missouri cases hold
that the findings must show that it was within the power
of the defendant to perform the act. Even the case of
*Clay v. Waters*, 178 Fed. 385, 21 Ann. Cas. 897, some-
times cited *contra*, can scarcely be said to be an op-
posing authority, because there it appeared that the
petition alleged and the answer admitted the facts
which constituted the contempt, and the judgment re-
cited that the defendant is "adjudged to stand in con-
tempt of this court as alleged in the petition."

Apart from these general considerations, we
think that § 5-502, O. C. L. A., applies and necessitates
the making of findings of fact in this, as in all other,
cases where there is a "trial of an issue of fact by the
court." While it is no doubt true that contempt proceed-
ings are *sui generis, Bessetti v. W. B. Conkey Co.*, 194
U. S. 324, 326, 336, 48 L. ed. 997, 1005, 24 S. Ct. 665;
*State ex rel. v. Owens*, 125 Okla. 66, 265 P. 704, 52 A. L.
R. 1270; 12 Am. Jur., Contempt, 434, § 67; 17 C. J. S.,
Contempt, 71, § 62; and that even a case of civil con-
tempt, such as this one, is, as this court has ofen said,
quasi-criminal in its nature, *State v. Mount*, 139 Or.
694, 700, 10 P. (2d) 606, and cases cited; yet, it is also
true that in respect of procedural questions of this

character such proceedings assimilate themselves to actions at law. This was expressly held in *State ex rel. v. McKinnon*, 8 Or. 487, 491, where the court, in discussing the effect which it was asserted should be given to an affidavit filed by one of the parties, said:

"But the determination was one of fact, and unless some error of law, calculated to affect that determination, is shown by the record, this court will hold it like all other decisions of fact in proceedings at law, conclusive on appeal."

So far as we are advised, that ruling has never been departed from in this state, and it expresses, as we think, the generally accepted view of the profession upon the subject—a view which is re-enforced by the language of § 11-516, O. C. L. A., that "either party to a judgment in a proceeding for a contempt may appeal therefrom, in like manner and with like effect as from a judgment in an action."

*State ex rel. v. Plese*, supra, and *State v. Bartholomew*, supra, support the conclusion which we have reached. In the former case the Washington court, and in the latter the Utah court, held, that a proceeding in contempt was a civil action, at least to the extent that the requirement of findings in the respective codes of those states must be complied with. In the Plese case the court said:

"If, as we have held, findings are necessary in the ordinary case, they ought to be more useful and necessary in a case of this character where the defendant may not only be fined but imprisoned."

In the Bartholomew case the court said:

"It is clear by 104-26-3 the legislature intended that in civil matters the court should make specific findings so that it would affirmatively appear upon what consideration the judgment entered was based as a very

substantial assurance that justice would be done and to simplify a review of the judgment.''

The logic of the view that if findings of fact are essential in the ordinary law action where only a judgment for money can be rendered, they are no less essential to support a judgment of contempt and sentence of imprisonment, is, in our opinion, inescapable. We hold, therefore, that the circuit court's failure to make findings in the instant case constituted reversible error. We hold further, in accordance with the authorities cited, that it should appear from the findings entered both that the defendant had failed to perform the act enjoined by the decree and that it was within his power to do so.

The remaining assignments of error, except one, are based upon exceptions said to have been taken to rulings of the court upon the trial. There is no bill of exceptions and no transcript of testimony. Included among the papers which have been sent to this court is a purported bill of exceptions which appears to have been ''tendered and presented'' on August 6, 1940. The trial judge, on September 6, 1940, entered an order reciting that no exceptions were taken during the course of the trial, and ordering that the proposed bill of exceptions so tendered be disallowed. The purported bill of exceptions appears to have been prepared by the defendant, who, together with one of his attorneys, made affidavit that the bill contained an accurate statement of evidence offered and received on the trial, of rulings of the court and exceptions allowed. The evidence was not taken down by a stenographer, and no attempt was made to tender a bill of exceptions consisting of the whole testimony, as authorized by § 5-703, O. C. L. A. The affidavits supporting the proposed bill

of exceptions were not made "by disinterested persons" as required by § 5-702, O. C. L. A. There is also a contention, first suggested, so far as the record before us indicates, in a motion for a new trial, and reiterated in the brief and oral argument of counsel for defendant, that "the court erred in refusing to the defendant the right to have said proceeding taken by a court reporter". The defendant filed an affidavit in support of the motion which refers to this charge, but nowhere in this affidavit is it stated that the defendant's desire to have the proceedings taken down by a court reporter was called to the attention of the trial judge or that the court made any ruling with respect thereto. At a hearing upon the motion for a new trial, it appears from the duly certified transcript of the proceedings then had, that the trial judge stated in effect that he had not denied defendant this right, that no demand for a reporter had been made, and the defendant conceded that "the court possibly didn't have the reporter matter called to his attention".

■ We have referred to this matter, which, possibly, from a technical standpoint, is not before us, because of the gravity of the charge made by the defendant, a member of the bar, that the trial judge had, by arbitrarily denying him the right to have the proceedings taken down by a reporter, prevented a proper review of the case in this court and grossly wronged the defendant. Since the trial judge, who has a deserved reputation for fairness and judicial poise, denied the accusation from the bench, and there is no convincing proof whatever to support it, we are of the opinion that it is without foundation.

■ In this posture of affairs, and without attempting to determine the effect of the recital in the circuit

court's order that no exceptions were taken during the course of the trial (which is, perhaps, controlling under *Colgan v. Farmers' & Mechanics' Bank*, 59 Or. 469, 478, 106 P. 1134, 114 P. 460, 117 P. 807), it suffices to say that the defendant has not resorted to any of the statutory methods to obtain the allowance of a bill of exceptions (see *State ex rel. v. Ekwall*, 135 Or. 439, 296 P. 57), there is no bill of exceptions here, and the questions attempted to be raised cannot, under settled rules of procedure, be considered by this court. *State ex rel. v. Grover*, 158 Or. 635, 637, 77 P. (2d) 430.

■ The last assignment of error, predicated on the court's denial of a motion for a new trial which specifies only alleged errors committed upon the trial, all of which were known to the defendant, at the time, is a nullity. *Benson v. Birch*, 139 Or. 459, 466, 10 P. (2d) 1050.

■ It results that the judgment must be reversed for the error of the court below in failing to make and enter findings of fact. Under *Glickman v. Solomon*, 140 Or. 358, 12 P. (2d) 1017, the absence of findings does not render the judgment void but only voidable, and the case will therefore be remanded to the circuit court with directions to make findings of fact and to enter a new judgment, from which either party may appeal.

Objections to cost bill sustained June 24, 1941

ON OBJECTIONS TO COST. BILL

(114 P. (2d) 546)

■ LUSK, J. Judgment in this case was reversed because of the failure of the circuit court to make findings of fact, and the cause was remanded with instructions to make and enter findings and a new

judgment. The defendant has filed a cost bill to which the relator has objected. This is a proceeding in civil contempt. Costs are purely statutory. *McKinney v. Nayberger*, 138 Or. 203, 220, 295 P. 474, 2 P. (2d) 1111, 6 P. (2d) 228, 229. The actions in which costs are allowed to the plaintiff are specified in 2 O. C. L. A., § 10-902; and by § 10-904, *ibid.*, the defendant is allowed costs in such actions unless the plaintiff be entitled to costs therein. The cases referred to in these sections do not include proceedings in civil contempt. The only provision for the allowance of costs in contempt proceedings is found in § 11-511, which relates only to costs to be assessed against the defendant, and then only in circumstances not present here. § 10-916 does not apply. *Eisen v. Multnomah County*, 31 Or. 134, 49 P. 730; *State ex rel. Hubbel v. Hubbel*, 128 Or. 667, 275 P. 679. Section 10-921 provides in part:

"In any action, suit, or proceeding as to which the allowance and recovery of costs may not be provided for in this chapter or elsewhere in this Code, costs may be allowed or not, according to the measure herein prescribed and apportioned among the parties, in the discretion of the court."

■ Under the foregoing section the allowance or disallowance of costs in this proceeding has been committed to the discretion of the court. The defendant was adjudged in contempt by the circuit court for failure to comply with a decree requiring him to contribute to the support of his minor children. The reversal in this court was solely on the ground above stated. In these circumstances we are of the opinion that the defendant is not entitled to recover costs or disbursements, and the objections to the costs bill are therefore sustained.