In the Matter of
VIRGINIA HANKS,
Court Reporter.
(CA 16007)
606 P2d 1151

James W. Walker, Portland, appeared before the Special Master on January 17, 1980, for Virginia Hanks, Court Reporter.

William F. Gary, Assistant Attorney General, Salem, appeared before the Special Master on January 17, 1980, for the Court of Appeals of the State of Oregon.

SCHWAB, C. J.

## SCHWAB, C. J.

This is a proceeding against Virginia Hanks, a pro tempore court reporter, for contempt of the Court of Appeals in not producing certain transcripts within the time allowed by statute or by further extensions allowed by the Court of Appeals.

Hanks was the court reporter in three criminal matters: *State v. Minear,* Multnomah County No. C79-02-30548, CA No. 15129; *State v. Johnson,* Multnomah County No. C78-04-05823, CA No. 14078; and *State v. Moore,* Multnomah County No. C79-03-30731, CA No. 14778. Hanks was also one of the court reporters in two civil cases: *Foss v. Lewis Bros., Inc.,* Multnomah County No. A78-04-06318, CA No. 14413; and *Besmehn v. Pacific Coast Shipping Company Monrovia,* Multnomah County No. A77-08-11770, CA No. 14091.

Notices of appeal in these cases were filed as follows: *Minear,* August 1, 1979; *Moore,* June 26, 1979; *Foss,* May 15, 1979; *Johnson,* April 2, 1979; and *Besmehn,* April 17, 1979.

Under ORS 19.029(3),[1] 19.078,[2] and 138.185,[3] a court reporter has 30 days after a notice of appeal is filed and served on the reporter to file the transcript.

---

[1] ORS 19.029(3) provides:

"The reporter shall prepare a transcript of such parts of the proceedings as are designated pursuant to paragraph (d) of subsection (1) of this section and subsection (2) of this section."

[2] ORS 19.078(1) provides:

" * * * The transcript shall be filed by the reporter with the clerk within 30 days after the filing of the notice of appeal. The reporter shall give immediate notice in writing to the parties that the transcript has been filed * * *."

[3] ORS 138.185(1) provides:

"In an appeal to the Court of Appeals, when the notice of appeal if [*sic*] filed, or when the appeal is perfected upon publication of notice as provided in ORS 138.120, the record in the trial court shall be prepared and transmitted to the State Court Administrator, at Salem, in the manner and within the time prescribed in ORS 19.029 and 19.078 to 19.098."

[523]

The Court of Appeals has authority to grant extensions of time for good cause shown. Supreme Court and Court of Appeals Rules of Appellate Procedure, Rule 6.35 (March 1, 1979).[4]

No requests for extensions of time for filing the transcript or a portion of the transcript were filed by Hanks or on her behalf in *Minear, Johnson,* or *Moore.* At her hearing, described below, Hanks denied receiving the notice of appeal in *Moore* and, while she said she received the notice in *Minear,* she said that she had not been "authorized" to begin preparing the transcript. As noted in his findings set forth below, the special master found that Hanks did have actual knowledge of the *Moore* appeal and that in *Minear* she was under a duty to produce the transcript before the end of October.

We note in this connection that the statutes, cited above, that impose the duty on the court reporter to produce a transcript within 30 days do not allow the court reporter to determine for herself when performance of the duty can be excused due to extraneous circumstances. That prerogative, under ORS 19.033(1) and (3),[5] and Rule 6.35, cited above, belongs solely to the Court of Appeals.

---

[4] Supreme Court and Court of Appeals Rules of Appellate Procedure, Rule 6.35 (March 1, 1979), provides:

"Only the appellate court may grant an extension of time for the preparation of a transcript of testimony.

"Any request for such an extension of time shall be made by the court reporter at least five days before the transcript is due. The request shall be supported by a certificate of the reporter, substantially in the form illustrated in Appendix B, and shall show service of a copy thereof on counsel for all parties."

[5] ORS 19.033 provides:

"(1) When the notice of appeal has been served and filed as provided in ORS 19.023 to 19.029, the Supreme Court or the Court of Appeals shall have jurisdiction of the cause, subject to a determination under ORS 2.520, but the trial court shall have such powers in connection with the appeal as are conferred upon it by law.

"* * * * *

Requests for extensions of time were filed in *Foss* and *Besmehn.*

Based on the records and files before this court at the time of the issuance of the order to show cause in this matter we determined that, either by operation of statute or because of extensions allowed, the transcripts in the subject cases were due as follows: *Minear,* September 4, 1979; *Johnson,* May 21, 1979; *Moore,* October 29, 1979 (despite timely filing of the notice of appeal in *Moore* on June 26, Hanks was not served with a copy of the notice of appeal until September 28); *Foss,* September 10, 1979; and *Besmehn,* September 12, 1979.

On October 18, the State Court Administrator, acting for the Court of Appeals, wrote to Hanks with reference to *Minear, Johnson, Foss,* and *Besmehn,* and warned her that if her transcripts in each case were not filed on or before November 5, "the Court of Appeals will issue a citation that you appear to show cause why you should not be held in contempt." At her hearing, described below, Hanks denied receiving this letter. As noted in his findings set forth below, the special master did not believe her denial. Hanks's transcripts were not filed by November 5.

On November 21, the Court of Appeals issued an order to show cause, ordering that Hanks appear by December 14 by filing an answer to the order to show cause, together with affidavits, brief, or memorandum, showing why she should not be adjudged guilty of contempt of the Court of Appeals for neglecting to

"(3) After the Supreme Court or the Court of Appeals has acquired jurisdiction of the cause, the omission of a party to perform any of the acts required in connection with an appeal, or to perform such acts within the time required, shall be cause for dismissal of the appeal. In the event of such omission, the court, on motion of the respondent or, on its own motion, may dismiss the appeal. An appeal dismissed on the court's own motion may be reinstated upon showing of good cause for such omission."

file the past-due transcripts, and why she should not be punished therefor in accordance with law. Hanks was personally served with the order to show cause on December 7.

The day before the scheduled return date on the order to show cause, on December 13, Hanks talked with an officer of the Court of Appeals by telephone, requesting a one-week extension of time to answer the order to show cause. After clearing the extension with a member of the Court of Appeals, the officer informed Hanks by telephone that the extension would be allowed, to December 21. Hanks did not respond to the order to show cause, by December 21 or at all, by filing an answer or otherwise.

On December 26, the Court of Appeals issued an order that Hanks appear at a hearing set for January 17, 1980, before a special master appointed by the Court of Appeals, to show why she should not be adjudged guilty of contempt of the Court of Appeals for neglecting to file the transcripts in question. Hanks was personally served with that order on December 31. Hanks appeared at the hearing on the date set, and was represented by counsel.

We find that the facts as reported to us by the special master are supported by the evidence, and we adopt them as our own. In pertinent part they state:

"(4)   Virginia Hanks received a copy of the notice of appeal in *Minear* in September 1979;

"(5)   Virginia Hanks knew that the transcript in *Minear* was to be filed at least by late October 1979 and has failed to do so, and in fact has not as yet started on the *Minear* transcript;

"(6)   Virginia Hanks has not kept the parties, through the attorneys of record in the *Minear* case, advised of the status of the transcript nor has made any effort to determine the intent of the parties as relates to their pursuing the appeal;

"  *  *  *  *  *

[526]

"(8)     Virginia Hanks had received the notice of appeal in *Johnson* at least by August 1979 and did not timely file the *Johnson* transcript on appeal;

"(9)     The *Johnson* transcript, consisting of a 45 minute probation revocation, and consisting of 28 pages, was filed on the date of the hearing on the order to appear, January 17, 1980. The transcript of the *Johnson* probation hearing would take approximately two hours maximum to dictate, with approximately two to three hours of typist time to transcribe, a total of less than one day required for completion of the *Johnson* transcript;

"(10)     Virginia Hanks failed to timely file the transcript of appeal in *Johnson;*
" * * * * *

"(12)     Virginia Hanks had knowledge of the filing of the notice of appeal in *State v. Moore* by at least December 7, 1979 and as of January 17, 1980 has made no effort to determine the status of the *Moore* appeal or to contact the attorneys of record for the parties;

"(13)     Virginia Hanks is in default on the filing of the *State v. Moore* transcript;
" * * * * *

"(15)     Virginia Hanks received and had knowledge of the notice of appeal in *Foss* at least by mid June 1979 and is in default and has not timely filed her portion of the transcript in the *Foss* case;

"(16)     Virginia Hanks' portion of the transcript of the *Foss* case was of two days of hearing, requiring a maximum of three to four days dictation time with a maximum of five to six days typist time;

"(17)     Virginia Hanks has not as yet completed her dictation of her portion of the *Foss* case, no portion of which has been typed, and is in default on the filing;
" * * * * *

"(19)     Virginia had knowledge of the notice of appeal in *Besmehn* by at least mid June 1979 and has not as yet commenced dictation of her to date portion of the trial testimony, and is in default thereof;
" * * * * *

[527]

"(21)   At least by December 7, 1979, when service was effected upon Virginia Hanks by the Washington County Sheriff's office of the Court of Appeals order to show cause, Virginia Hanks was aware that on October 18, 1979, the State Court Administrator had written her that if the transcripts in *State v. Minear, State v. Johnson, Foss v. Lewis Bros., Inc.,* and *Besmehn v. Pacific Coast Shipping Company Monrovia* were not filed before November 5, 1979, that the Court of Appeals would issue a citation that she appear to show cause why she should not be held in contempt;

" * * * * * *

"(25)   Virginia Hanks willfully and intentionally gave priority to free lance depositions commencing in September 1979 and up to the date of the January 17, 1980 hearing, and willfully and knowingly failed to timely file the transcripts in the subject cases and willfully and knowingly failed to comply with the orders of the Court of Appeals to file the subject transcripts;

"(26)   Virginia Hanks' failure to file the transcripts in question was prejudicial to the litigants;

"(27)   There are no mitigating circumstances as relates to Virginia Hanks' failure to timely file the subject transcripts."

The following exchange between counsel from the Attorney General's office and Hanks is especially revealing of Hanks's contempt of the Court of Appeals:

"Q   Miss Hanks, one of the reasons you gave for the delay in filing these transcripts, I believe, was that you have been doing a lot of free lance and that there is pressure to get depositions out. Is that your testimony?

"A   That's since October, I think is when I started free lancing.

"Q   So can we infer from that that you have been doing depositions as a priority above getting these transcripts out?

"A   (Pause) Basically.

"Q   Okay.

"A   It's a matter of mostly losing a job and not getting any more calls if the transcript in the deposition isn't gotten out right away.

"Q   Do you understand as a pro tem reporter, by Statute, you're an officer of the court?

"A   Yes.

"Q   That your responsibility to file transcripts are official duties that you must comply with?

"A   Yes." ·

ORS 8.320 provides in pertinent part:

"Any circuit judge or circuit judge pro tem not having available the services of an official reporter may appoint an individual to act as reporter pro tem, who shall perform the same duties as the official reporter * * *. Such reporter pro tem shall possess the qualifications and take the oath prescribed for the official reporter * * *."

ORS 8.310 provides, in pertinent part:

"(1)   * * * Before entering upon the discharge of his official duties, each such [official] reporter shall take and subscribe an oath faithfully to perform the duties of his office.

"(2)   Reporters shall be officers of the court in which they serve and of any court to which an appeal is made whenever the reporter has recorded the proceedings which are the subject of the appeal."

ORS 33.010 provides, in pertinent part:

"(1)   The following acts or omissions, in respect to a court of justice, or proceedings therein, are contempts of the authority of the court:
" * * * * *

"(c)   Misbehavior in office, or other wilful neglect or violation of duty, by an attorney, clerk, sheriff or other person appointed or selected to perform a judicial or ministerial service.
" * * * * *

"(e)   Disobedience of any lawful * * * order * * * of the court * * *."

The evidence in this case, clearly reflected in the transcript and ably summarized by the special master's findings, shows that Virginia Hanks did not file

the transcripts in question by their respective due dates and did not file requests for extensions of time by those dates. She was thus in default in all five cases, and her failure to comply with the orders of the Court of Appeals to produce these transcripts was contempt of the Court of Appeals by an officer of this court under ORS 33.010(1)(c) and (1)(e).

On the question of prejudice to these litigants under ORS 33.020,[6] we note that *Minear* and *Moore* were felony convictions resulting in the defendants' incarceration pending appeal; *Johnson* was an order revoking probation, and leaving the defendant free on security release pending appeal; *Foss* resulted in a trial court order granting the defendant a new trial after the plaintiff had won a jury verdict of $111,988.44; and in *Besmehn* the plaintiff recovered a judgment of $129,000. Based on the findings of the special master, it appears that the elapsed time between Hanks's knowledge of the notices of appeal and the date of her contempt hearing on January 17 were approximately as follows: *Minear,* three months; *Moore,* six weeks; *Johnson,* five months; *Foss,* seven months; *Besmehn,* seven months.

In *In the Matter of Julie Wilson,* 42 Or App 515, 601 P2d 133 (1979), we held that a court reporter's failure to produce transcripts for periods of more than 11 months and approximately nine months constituted prejudice to the litigants under ORS 33.020(1). In this proceeding, we conclude that Hanks's contempt was prejudicial to the litigants at least in *Minear, Johnson, Foss* and *Besmehn.*

---

[6] ORS 33.020(1) provides:

"(1) Every court of justice and every judicial officer has power to punish contempt by fine or imprisonment, or both; but such fine shall not exceed $300 nor the imprisonment six months, except in the cases mentioned in subsection (2) of this section; and when the contempt is not one of those mentioned in paragraphs (a) and (b) of subsection (1) of ORS 33.010, or in subsection (1) of ORS 1.240, it must appear that the right or remedy of a party to an action, suit or proceeding was defeated or prejudiced thereby before the contempt can be punished otherwise than by a fine not exceeding $100."

[530]

In *Wilson,* the court reporter had produced the transcripts by the time of the hearing before the Court of Appeals' special master. We said: "Were the transcripts still unproduced, we would impose a period of imprisonment to ensure their production." 42 Or App at 520. Since they had been produced by the time of the hearing, we imposed as punishment only a $300 fine.

In this case, the transcripts in four of the five cases had not been produced by the time of the hearing, and there were no mitigating circumstances excusing such failures. A period of imprisonment is therefore appropriate in this case, even if the remaining transcripts are produced before the order of this court imposing the imprisonment can take effect.

We therefore impose as punishment for contempt of the Court of Appeals a $300 fine and a term of imprisonment in the Washington County Jail of five days. In addition, if all four of the remaining transcripts involved in this matter are not served and filed by the end of the five-day period of incarceration, it is the order of this court that Hanks remain imprisoned for a period up to six months, or until all four transcripts are produced, whichever event occurs first.

The fine is payable to the State Court Administrator within 20 days of the entry of the mandate.

The order imposing a term of imprisonment as punishment for contempt of at least five days is stayed pending the entry of this court's mandate.

Judgment of contempt entered. Term of imprisonment and fine imposed.