Argued and submitted September 8, 1980, affirmed February 4, 1981

In the Matter of

# VIRGINIA HANKS,
## Court Reporter,

### *Petitioner.*

## (CA 16007, SC 26906)

623 P2d 623

John C. Stevason, Portland, argued the cause for petitioner. With him on the petition was Spears, Lubersky, Campbell & Bledsoe, Portland.

William Gary, Assistant Attorney General Salem, argued the cause for the Court of Appeals.

PETERSON, J.

### PETERSON, J.

Virginia Hanks, a pro tempore court reporter, was held in contempt by the Court of Appeals for failing to file transcripts in five cases pending in the Court of Appeals. As "punishment for contempt," the Court of Appeals imposed a five-day jail term and a $300 fine.[1] We granted review.

### THE FACTS

ORS 19.029(3),[2] 19.078,[3] and 138.185[4] require court reporters to file transcripts within 30 days after a notice of appeal is filed. Our Rule 2.05(1) requires that a copy of the notice of appeal be served "on the court reporter or reporters." The appendix to this opinion lists five cases in which Hanks was the court reporter, the type of case, the date of the notices of appeal, the due date of the transcripts, the date Hanks received notice of the appeals, and the time from her receipt of notice until the contempt hearing. On November 21, 1979, the Court of Appeals issued and Hanks was thereafter properly served with an order to show cause requiring her to answer and show, by December 14, 1979, why she "should not be adjudged guilty of contempt of the Court of Appeals * * * for neglecting to file transcripts in [the five cases] and why [she] should not be punished therefor in accordance with law." Although Hanks requested and was given a one-week extension in which to file a response to the order to show cause, no response was filed.

---

[1] 44 Or App 521, 606 P2d 1151 (1980).

[2] ORS 19.029(3) provides:

"The reporter shall prepare a transcript of such parts of the proceedings as are designated pursuant to paragraph (d) of subsection (1) of this section and subsection (2) of this section."

[3] ORS 19.078(1) provides:

"* * * The transcript shall be filed by the reporter with the clerk within 30 days after the filing of the notice of appeal. The reporter shall give immediate notice in writing to the parties that the transcript has been filed. * * *"

[4] ORS 138.185(1) provides:

"In an appeal to the Court of Appeals, when the notice of appeal if [sic] filed, or when the appeal is perfected upon publication of notice as provided in ORS 138.120, the record in the trial court shall be prepared and transmitted to the State Court Administrator, at Salem, in the manner and within the time prescribed in ORS 19.029 and 19.078 to 19.098."

On December 26, 1979, the Court of Appeals ordered that Hanks appear at a hearing on January 17, 1980, before a special master appointed by the Court of Appeals, to show why she should not be adjudged guilty of contempt for failing to file transcripts in the five cases, and why she should not be punished therefor in accordance with law. The order set forth the facts in each of the five cases, including the number of each case, the date notices of appeal were filed, the cases in which Hanks had requested extensions, the transcript due dates in each case, the text of appropriate statutes, and the failure to file transcripts. Copies of affidavits of court personnel and the previous order to show cause were attached. The order further provided:

"Under ORS 33.095(1), you are entitled to be represented by counsel at the hearing. Under ORS 33.095(2), if you can show that you are indigent you are entitled to have counsel appointed to represent you. If you are indigent and require counsel to be appointed, such request must be filed with special master Nepom at his offices at 800 Oregon National Building, 610 S. W. Alder Street, Portland, Oregon 97205, on or before January 10, 1980.

"Should the Court of Appeals enter a judgment of guilty on the charge of contempt, you will be subject to punishment in accordance with ORS 33.020, as construed in *State ex rel Oregon State Bar v. Lenske,* 243 Or 477, 495-97 (1966). *See In re Julie Wilson,* 42 Or App 515 (October 8, 1979)."

Hanks appeared at the hearing, represented by counsel, and testified on her own behalf, and was afforded the opportunity to offer other evidence. Thereafter, the special master filed findings of fact which were adopted by the Court of Appeals. The findings of fact are set out at length in the opinion of the Court of Appeals.[5]

There is no dispute about the facts found by the Court of Appeals, and from our examination of the record we are satisfied that the findings of the Court of Appeals have been proved beyond any reasonable doubt.[6]

---

[5] The facts are lengthy and will not be set forth herein other than as set forth above and as necessary below.

[6] The Court of Appeals found that Hanks was "in default in all five cases." 44 Or App at 530. Hanks testified that in *State v. Minear,* the defendant's lawyer told

In her petition for review Hanks makes these assertions:[7]

1. The evidence was insufficient:

    a. To support the finding that petitioner violated an order of the Court of Appeals or support the finding that she disobeyed such an order willfully; such findings being necessary elements to a judgment of contempt;

    b. To support the finding of prejudice to a party in an action, such finding being a necessary element to the imposition of a sentence of incarceration.

2. The Court of Appeals erred by failing to apply the "beyond a reasonable doubt" standard of proof in adjudging petitioner's guilt of contempt.

3. The Court of Appeals erred in placing the burden of proof upon petitioner.

4. The Court of Appeals erred by failing to accord petitioner a presumption of innocence.

5. The Court of Appeals erred by denying petitioner the right to confront witnesses against her.

6. The Court of Appeals was without jurisdiction as the charge of contempt was made without the required supporting affidavits.

7. The petitioner was prosecuted for contempt in violation of ORS 33.060.

## THE EVIDENCE WAS SUFFICIENT

■ There is no question as to the salient facts supporting the Court of Appeals findings. Hanks was a court reporter. She knew the transcripts were due. She deliberately chose not to file them in a timely manner. She opted to give priority to her private deposition clients.[8]

---

her to hold off on the transcript pending "further authorization," and that such further authorization was never received. Hanks denied receiving a copy of the notice of appeal in *State v. Moore,* and claimed she first learned of that appeal when she received the show cause order. We need not decide whether an attorney's request to postpone preparation of the transcript excuses a reporter from the obligation to prepare the transcript or to advise the appellate court of the situation. In deciding this case, we will exclude the facts of *Minear* and *Moore* from our consideration. Even so, the evidence of Hanks' wilful contempt is overwhelming.

[7] None of these contentions was raised before the special master by her then attorney. The first time these points were raised was in her petition for review. Hanks' attorneys before this court did not represent her at the hearing.

[8] Hanks testified:

Even after Hanks was served with the order to show cause she failed to file any transcripts until the day of the hearing, January 17, 1979, when she filed the 28-page transcript in *State v. Johnson.*

ORS 8.310 provides, in pertinent part:

"(1)   * * * Before entering upon the discharge of his official duties, each such [official] reporter shall take and subscribe an oath faithfully to perform the duties of his office.

"(2)   Reporters shall be officers of the court in which they serve and of any court to which an appeal is made whenever the reporter has recorded the proceedings which are the subject of the appeal."

ORS 33.010 provides, in pertinent part:

"(1)   The following acts or omissions, in respect to a court of justice, or proceedings therein, are contempts of the authority of the court:

"* * * * *.

"(c)   Misbehavior in office, or other wilful neglect or violation of duty, by an attorney, clerk, sheriff or other person appointed or selected to perform a judicial or ministerial service.

"* * * * *."

---

"Q Miss Hanks, one of the reasons you gave for the delay in filing these transcripts, I believe, was that you have been doing a lot of free lance and that there is pressure to get depositions out. Is that your testimony?

"A That's since October, I think is when I started free lancing.

"Q So can we infer from that that you have been doing depositions as a priority above getting these transcripts out?

"A (Pause) Basically.

"Q Okay.

"A It's a matter of mostly losing a job and not getting any more calls if the transcript in the deposition isn't gotten out right away.

"Q Do you understand as a pro tem reporter, by Statute, you're an officer of the court?

"A Yes.

"Q That your responsibility to file transcripts are official duties that you must comply with?

"A Yes."

There is no question that Hanks knew the transcripts were overdue. She wilfully chose to give priority to the requests of private deposition clients. Her conduct as an officer of the court was more than deficient; it reflects a total disregard of her obligations to the court and to the litigants. She unquestionably violated ORS 33.010(1)(c).[9]

## THE EVIDENCE OF PREJUDICE IS STRONG AND CONVINCING BEYOND REASONABLE DOUBT

■ In *State v. Johnson* (see appendix) the defendant was incarcerated pending appeal. *Foss v. Lewis Bros., Inc.* and *Besmehn v. Pacific Coast Shipping Co.,* (see appendix) were both civil cases. In *Foss* the plaintiff was appealing an order granting defendant a new trial following a verdict for plaintiff; in *Besmehn,* the defendant was appealing from a verdict for the plaintiff. The delay in each case was substantial. Such protracted unnecessary delays arising from Hanks' failure to perform a ministerial but nonetheless important task, of themselves, were prejudicial, for delay adds to the expense of litigation, adds to the interest on the judgment, deprives the successful plaintiff of the possible use of the money judgment, and most important, places the litigants themselves, particularly in criminal cases, in limbo — uncertain as to the ultimate result in their cases. These prejudicial effects of delay continued as long as Hanks continued to intentionally delay filing the transcripts.

## REASONABLE DOUBT, BURDEN OF PROOF, PRESUMPTION OF INNOCENCE AND RIGHT TO CONFRONT WITNESSES

Hanks asserts that she was charged and found guilty of *criminal contempt,* that she was therefore entitled to the procedural due process applicable to criminal cases, and that she was deprived of her rights under the Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States.

---

[9] The Court of Appeals also found Hanks in contempt under ORS 33.010(1)(e) for failing to produce the transcripts. ORS 33.010(1)(e) deals with contempt for "disobedience of any lawful * * * order * * * of the court." In view of our conclusion that Hanks' contempt under ORS 33.010(1)(c) clearly is established, we do not consider the application of ORS 33.010(1)(e).

■■ Hanks was charged and found guilty of criminal contempt.[10]

Hanks asserts:

"Petitioner's right to confront and cross examine the witnesses against her was also violated. Affidavits of Marilyn Hartley, Records Clerk in the State Court Administrator's Office and David Gernant were attached to the Court of Appeals' Order to Show Cause and Order to Appear. Ms. Hartley's affidavit stated hearsay to the effect that the five transcripts in question were not filed by a certain date (not that they were required to be filed by that date or any other date). Mr. Gernant gave an account of petitioner's request for an extension of time which conflicted with petitioner's testimony at the hearing. Neither Ms. Hartley nor Mr. Gernant were produced at the hearing so that their testimony could be taken into evidence and petitioner given an opportunity to cross examine."

■ None of these objections was made at the hearing. There is no question as to the correctness of the statements of affiant Marilyn Hartley that the transcripts had not been filed. Hanks admitted that the transcripts had not been filed. Mr. Gernant's affidavit is not relevant to the basis upon which we affirm the finding of contempt.

---

[10] The distinction between criminal contempt and civil contempt is not always made clear, and much confusion has arisen in connection with the two terms. In a nutshell, criminal contempt is contempt which is *punished*, usually by fine and/or imprisonment. Civil contempt is contempt in which the court's sanction is intended to compel compliance with the court's order, such as jailing a recalcitrant witness until the witness answers questions which the court has ordered to be answered.

Because of the holdings of the Supreme Court of the United States in *Bloom v. Illinois*, 391 US 194, 88 S Ct 1477, 20 L Ed 2d 522 (1968), and *Gompers v. Bucks Stove & Range Co.*, 221 US 418, 31 S Ct 492, 55 L Ed 797 (1911), we will assume, for purposes of this opinion, that Hanks was entitled to procedural due process applicable to criminal proceedings. We should add, however, that none of the claims Hanks now asserts were raised until after the Court of Appeals rendered its decision, and we could well resolve most issues in this case against her for failing timely to raise objections or otherwise assert the claims she now makes.

Further on the differences between civil and criminal contempt, *see* R. Goldfarb, The Contempt Power 49-67 (1963); D. Dobbs, *Contempt of Court: A Survey*, 56 Cornell L Rev 183, 235 (1971); *State ex rel Oregon State Bar v. Lenske*, 243 Or 477, 480, 405 P2d 510, 407 P2d 250 (1966); and *Richmond Black Police Off'rs Assoc. v. City of Richmond, Va.*, 548 F2d 123, 125 (4th Cir 1977).

Hanks has never claimed that she was entitled to a jury trial *(See* Or Const., Art I, § 11; *Bloom v. Illinois, supra;* and *Dyke v. Taylor,* 391 US 216, 88 S Ct 1472, 20 L Ed 2d 538 (1968); Goldfarb, *supra* at 168-184) nor that the factfinding proceedings by the Court of Appeals were otherwise improper.

Hanks asserts that the Court of Appeals failed to accord her the "constitutional right to be presumed innocent," but nothing in the record supports this assertion.

Hanks also claims that the special master improperly shifted the burden of proof to her. At the beginning of the hearing, the following occurred:

"SPECIAL MASTER: Okay. Thank you. As I understand, I had an opportunity, of course, to review the affidavits in the file and I think the burden is upon Mrs. Hanks, Mr. Walker, to proceed. So proceed in any manner you see fit.

"You understand the nature of this proceeding, that I'm here to gather evidence and the transcript will be transmitted to the Court of Appeals within five days. Within ten days I have to make a summary of the evidence and to submit my findings of fact along to the Court of Appeals.

"MR WALKER: Yes, Your Honor.

"SPECIAL MASTER: Okay. Thank you.

"MR. WALKER: Do you want us to swear in Mrs. Hanks?

"SPECIAL MASTER: Yes. Right. Call any witnesses or any way you want to do it."

This exchange in no way reflects that the burden of proof was imposed upon Hanks. Had Hanks wanted to, she could have remained silent, called no witnesses, done nothing, and required the Court of Appeals to prove its case. No burden of proof was placed on Hanks.[11]

As for Hanks' claim that the evidence was insufficient to establish her guilt beyond reasonable doubt, Hanks does not question the facts other than to point to the facts regarding *State v. Minear* and *State v. Moore,* see note 6. The evidence which supports the finding of her wilful contempt is without dispute and is overwhelming.

## SUFFICIENCY OF THE AFFIDAVITS AND CAPTION

In her petition for review, Hanks argues:

[11] *Cf. State ex rel v. Blackwell,* 181 Or 157, 164, 179 P2d 278, 179 P2d 1023 (1947):

"To overcome this prima facie case, it was necessary for the defendant affirmatively to show his inability to comply with the decree relative to payments. The burden of proceeding with the evidence rested upon the defendant, but the burden of proof did not shift * * *."

"* * * The Court of Appeals did not have jurisdiction over the contempt proceedings as the affidavits were insufficient to state the elements of contempt against petitioner. *State ex rel Oregon State Bar v. Lenske,* 243 Or 477 (1966). * * *.

"The affidavits as well as the Orders to Show Cause and to Appear also failed to assert or charge that petitioner's conduct caused prejudice to any party. Petitioner therefore had no notice of, or opportunity to prepare for, a charge which could lead to her incarceration, since under ORS 33.020 only where such prejudice is an element of the offense may imprisonment be imposed. * * *.

"The Court of Appeals also failed to follow the proper procedure in prosecuting the charges of contempt against petitioner. Oregon law requires that in a case of criminal contempt, the proper procedures must be strictly observed. See *State ex rel Oregon State Bar v. Lenske,* 243 Or at 481. ORS 33.060 requires that the State be named plaintiff and prosecute the contempt. * * *." (Footnotes omitted.)

ORS 33.040 provides:

"In cases other than those mentioned in ORS 33.030 [direct contempts], before any proceedings can be taken therein, the facts constituting the contempt must be shown by an affidavit presented to the court or judicial officer, and thereupon such court or officer may either make an order upon the person charged to show cause why he should not be arrested to answer, or issue a warrant of arrest to bring such person to answer in the first instance. The affidavit shall set forth the facts constituting the contempt, but need not contain recitals of matters already appearing in the record of any action, suit or proceeding in which the person charged with contempt has been personally served with process. It shall be sufficient if the name of the State of Oregon be added as a party plaintiff in the affidavit and proceedings following it, without any action of the district attorney, and without any proceedings for adding such party."

■ This court has held, in contempt proceedings initiated on the motion of a third party, that an affidavit stating facts sufficient to constitute a *prima facie* case is "essential to invoking the jurisdiction of the court." *State ex rel Oregon State Bar v. Lenske,* 243 Or 477, 480, 405 P2d 510, 407 P2d 250 (1966). The rationale for this rule is that the initial affidavit is in the nature of a complaint, to be

governed by the rules of pleading and, like any initial pleading, it must give the contemnor adequate notice of the charge. This case, however, does not involve a relator seeking to invoke the jurisdiction of the court by swearing to facts which justify intervention by the court into a dispute of the parties. Here, the court itself is acting to assert its authority to administer its affairs. In a proceeding initiated on the court's own motion, the order to show cause, not the affidavit, is more closely analogous to a civil complaint because it is the order which is signed and issued by the moving party. Petitioner correctly points out that the affidavits in this case do not state a *prima facie* case of contempt. However, both the order to show cause and the order to appear at hearing itemized all elements of the contempt. Thus, petitioner was fully apprised of all charges against her and the factual issues in the case were carefully defined. In *Lenske, supra,* the insufficiency of the affidavits was characterized as a "technicality," 243 Or at 484, and the relator was given leave to correct the defect by filing supplemental or amended affidavits with the court. Had such objection been made herein at the time of the hearing or before, the deficiency could have been corrected. In view of the late objection to the sufficiency of the affidavits, the meticulous clarity of the orders, and the clear evidence in the record, we hold that the failure timely to object waives this objection. *State ex rel Bassett v. Bassett,* 166 Or 628, 635, 113 P2d 432, 114 P2d 546 (1941).

For the same reason, Hanks' failure timely to object to the caption operates to waive any such objection.[12]

## CONCLUSION

Court reporters are "officers of the court in which they serve and of any court to which an appeal is made * * *." ORS 8.310. Hanks knew she was an officer of the court, and she knew the transcripts were due. She wilfully chose to ignore her duty.

Affirmed. Pursuant to Hanks' motion, execution of the sentence shall be stayed for 30 days following the entry of the mandate.

---

[12] The failure to use the statutory caption (if that is appropriate in a contempt proceeding in which an appellate court is the plaintiff) caused no prejudice. *See also, Taylor v. Gladden,* 232 Or 599, 604, 377 P2d 14 (1962).

APPENDIX

| | State v. Minear | State v. Johnson | State v. Moore | Foss v. Lewis Bros., Inc. | Besmehn v. Pacific Coast Shipping Co. Monrovia |
|---|---|---|---|---|---|
| DATE OF NOTICE OF APPEAL | 8/1/79 | 4/20/79 | 6/26/79 | 5/15/79 | 4/17/79 |
| DUE DATE OF TRANSCRIPTS | 9/4/79 or 10/7[a] | 5/21/79 | 10/29/79 | 9/10/79[b] | 9/12/79[c] |
| TIME FROM DUE DATE UNTIL CONTEMPT HEARING | 4 mos. or 3 mos.[d] | 8 mos. | 3 mos. | 4 mos. | 4 mos. |
| DATE HANKS RECEIVED NOTICE | 7/79 | 8/79 | 9/28/79 or 12/7/79[e] | 6/79 | 6/79 |
| TIME FROM RECEIPT OF NOTICE UNTIL CONTEMPT HEARING | 4 mos. | 5 mos. | 4 mos. or 6 weeks[f] | 7 mos. | 7 mos. |
| TYPE OF CASE | felony conviction | felony conviction | order revoking probation | order granting defendant a new trial after verdict for plaintiff | judgment for plaintiff |
| PREJUDICE | yes— defendant incarcerated pending appeal | yes— defendant incarcerated pending appeal | yes | yes | yes |

---

[a] The show cause orders indicate the earlier due date while the Court of Appeals opinion indicates the later one. 44 Or App at 525.

[b] This due date includes an extension of time.

[c] This due date includes an extension of time.

[d] This computation is affected by the choice in note (a).

[e] The Court of Appeals opinion refers both to notice in September (44 Or App at 525) and to notice in December at the time of the order to show cause (44 Or App at 527).

[f] This computation is affected by the choice in note (e), *supra.*

**TANZER, J.,** concurring.

I do not disagree with the majority in any respect, but I feel this court should not have considered the nonjurisdictional issues which were not timely raised during the proceedings in the Court of Appeals.